THE STATE ex rel. CHARLES R. GILL *vs.* THE COMMON COUNCIL OF THE CITY OF WATERTOWN.

### WRIT OF MANDAMUS.

Heard July 26.]                    [Decided August 7, 1859.

*Mandamus—Office—Discretion—Removal—Construction.*

Mandamus is the proper remedy to restore a party to the possession of an office from which he has been illegally removed.

Where a party had been removed from the office of superintendent of schools of the city of Watertown by the common council, and brought a writ of mandamus to be restored to his office, and the council returned that all the acts charged against him, and for which he had been removed, did not occur during the prior term of office; and, also, that the common council had not power to restore him, as the appointing power was vested in the school commissioners of the city; Held, that such return was insufficient.

The common council of the city of Watertown do not possess the power to remove the superintendent of schools at discretion. A power in the council to remove for "due cause," is not a power to remove at discretion; but they must have a legal cause of removal, and their decision will be controlled by mandamus.

The uncontrolled discretion of inferior officers or bodies includes only their discretion upon the very subject matter which they may determine, but does not include their decision as to the extent of their own authority.

The judgment of inferior officers or tribunals upon the matters which by law they may determine in their discretion, will not be controlled; but their judgment as to what the law has allowed them to determine, will be controlled.

Where a party exercises his discretion on matters which the law authorizes him to decide, his discretion will not in general be interfered with by mandamus; otherwise when he assumes to act upon matters not entrusted to him; or should he decide not to act upon matters where the law had clothed him with authority.

The duty of determining the extent of authority of the common council of a city is imposed on the court; and it will on a proper application restrain all inferior officers and bodies to the limits authorized by law, and compel them to act within those limits.

Charges for removal which relate to acts done during a prior term of office,

State ex rel. Gill vs. Common Council, &c.

will not, in general, be " due cause " for such removal; the presumption
being that the new appointment amounts to a condonation of prior acts.

When a party or body having the power to remove for " due cause," do un-
dertake to remove an officer for " due cause, and for official misconduct,"
but they cannot show by return to a writ of mandamus for what cause or
misconduct the officer was removed, their decision will be reversed; and it
is not an answer to such writ, that they have not the authority to re-appoint,
because the removal being illegal, their is no vacancy in the office.

Where a power to remove " for due cause," is given to inferior officers and
tribunals, the words " for due cause " operate as a limitation on the
power.

What is " due cause " for the removal of an officer, is a question of law, to
be determined by the judicial department; and in the absence of any statu-
tory provision as to what shall constitute such cause, it must be determined
with reference to the nature and character of the office and the qualifications
requisite to fill it.

The case of *Attorney General vs. Brown*, 1 Wis., 513, considered and ap-
proved.

The relation in this case sets forth that Gill was appointed
by the commissioners of schools of the city of Watertown,
in May, 1859, to the office of superintendent of schools in
that city; and had qualified and entered upon the duties of
the office, which was one of trust and profit. On the 1st day
of June he was served with a notice to answer certain charg-
es, before the common˙council of the city, in writing, on the
fifth; and that the common council would hear the proofs,
&c., on the 13th, at their council room; and take such action
in the matter as might be deemed expedient. The common
council charged : 1st. That Gill, as superintendent, &c., neg-
lected and refused to prepare and submit to the common
council a report pursuant to the provisions of law. 2d. That
Gill, as superintendent, &c., has neglected, during the past
year, to visit the schools, at least twice during each term, and
to report the condition of the same to the board of education.
3d. That Gill had consented to and caused to be paid out
the contingent expenses of the board of education, during the
year ending April 1, 1859, without having the same audited
and allowed by the common council, as required by law.
4th. That Gill, as a member of the board of education, had
voted with others to refuse to allow J. J. Enos to take his.
seat and act in said board, after he had been duly elected to
that seat.

Gill answered these charges. That, as to the first charge,

256 **WISCONSIN REPORTS.** [1859

State ex rel. Gill vs. Common Council, &c.

it was the duty of the board of education to make the report, and not of the superintendent. As to the 2d charge, he denied the same, and insisted that he had visited the schools during the last term where new teachers had been employed, and did not deem it necessary to visit the others; and that the board of education was duly informed of the condition of all the schools. As to the 3d charge, he confessed the same, and claimed that it was a right belonging to that body. As to the 4th charge, he denied the same; and insisted that, in his opinion, Enos was not entitled to a seat in the board, and he voted, as he thought, rightly.

On the 13th day of June the common council met, but took no action upon the matter of the charges; and adjourned to the 18th. On that day the council met, and took up the matter for consideration, and without attempting to make any proofs, called upon and required Gill to defend himself against the charges; and after being heard in an argument, and without any proofs or evidence, the council adopted a resolution for his removal. The resolution is as follows:

"*Whereas*, Charges have been preferred to the common council of the city of Watertown against Charles R. Gill, superintendent of schools of said city; and due notice and opportunity having been given to said Gill to appear before said council and make his defense to said charges, and the said Gill having appeared and submitted his defense; *And, Whereas*, In the the opinion of this council, due cause exists for the removal of said Gill from said office for official misconduct; therefore,

"*Resolved*, That the said Charles R. Gill be and he is hereby removed from the office of superintendent of schools of the city of Watertown, and said office of superintendent of schools is hereby declared to be vacant."

The relation further stated that the council refused to specify on which charges they found him guilty; and that all the charges relate to matters of conduct during a term of office which had expired before these charges were preferred against him.

To this writ the common council answered, that power was given to the common council to remove this officer for due cause, upon notice given him and opportunity to be heard in his defense. It confessed the appointment of Gill to the office and his qualification, and then set forth the charges preferred, and the notice served on Gill as stated in the relation, also the meeting of the council as stated, and the hear-

ing of Gill in defense; and the passage of the resolution, The answer alludes to such documentary evidence as was before the council, but none is returned. It denied that Gill requested the council to specify which charges were sustained or for what cause they removed him from office, until after the resolution was passed. It denied that all the charges related to matters of conduct during a former term of office; but that the fourth and last charge related to conduct subsequent to his re-appointment in the month of May, 1859. The answer then claimed that Gill had never requested them to reinstate him; and also that they had no authority to do so by law; inasmuch as that officer was appointed by the commissioners of the schools, and not by the common council.

To this answer the relator filed a general demurrer.

*Gill, Barber & Fribert,* for the relator.

*George B. Smith,* for the respondents.

*By the Court,* PAINE, J. This is a mandamus sued out by the relator to compel the common council of the city of Watertown to restore him to the office of superintendent of schools of that city. The relation sets forth that he was duly appointed to the office, and that certain charges were made against him, of which he had notice, and to which he made answer under oath, and that after being heard before the council, without any further proof being produced, he was removed. It also avers that all of these charges related to his conduct in the office during a prior term, and not to anything done or omitted during the term in which he was removed.

The council made return to the alternative writ, setting forth the charges against the relator and his removal substantially as set forth in the relation. The return however contains an averment that all the charges did not relate to acts of the relator during the prior term; but that the fourth and last charge related to acts by him "subsequently to his appoint-

ment" in May, 1859.   It also averred that the council had no power to restore him, because by law the power of appointing the superintendent is vested in the school commissioners, and not in the council.   To this return the relator demurred, and the question presented is, whether the return is a sufficient answer to the writ.

It cannot be necessary to examine authorities to show that a mandamus is a proper remedy to restore a party to the possession of an office from which he has been illegally removed. If citation were necessary the following list would seem to place the question beyond discussion :  Vin. Ab. Title Mandamus, C.; Bac. Ab.  Title Mandamus, C., 1;  Com. Dig.  Title Mandamus, A ; *Howard vs. Gage,* 6 Mass., 462 ; *Strong vs. Pettibone et al.,* 20 Pick., 484 ;  *Green vs. The African Methodist Episcopal Society,* 1 S. & R., 254; *Commonwealth vs. The Guardians of the Poor et al.,* 6 id., 469 ;  *Fuller vs. The Trustees et al.,* 6 Conn., 532 ;  *County Court vs. Sparks,* 10 Missouri, 118 ;  *People vs. Steele,* 2 Barb., 397 ;  *Dew vs. The Judge, &c.,* 3 Hen. & Mum., 1.

But it is contended by the counsel for the respondent, that in removing the relator, the common council has exercised a discretion which the law vests in it, and that the court cannot by mandamus review or control that discretion.   And, if the premises assumed are correct, we think the conclusion of law follows.   For, though there are many cases that have gone much farther, particularly with reference to the acts of officers, other than judicial, yet we think the rule is now well established, that where the law vests in any officer or body, a discretion with reference to a subject, that this discretion will not be controlled by a mandamus.   But we do not think this rule applicable to this case, for the reason that the law does not vest in the common council the power to remove the officers of the city at its discretion.   It was said on the argument that the council had the absolute power of removal, and

if this were so, it would undoubtedly be a case of discretion with which we could not interfere. But it seems to us very certain that the council had no such power.

For, on looking at the source of their authority in § 6, chap. 327, Pr. Laws of 1857, it appears that they have power to remove only " for due cause." This is a clear limitation of the power of removal, and if the council should remove without " due cause," its action would be entirely unauthorized. But it was said that the council had a discretion to determine what was " due cause." This may be true, if nothing more was meant than that the council had to determine for itself in acting under this power, whether there was " due cause " of removal, and that in thus determining it, it must exercise its best judgment or discretion. This is undoubtedly so. But this does not make it a case of discretion, within the rule that a discretion vested by law will not be controlled by mandamus. For in every instance where it is conceded that a mandamus is a proper remedy to compel the performance of a specific duty required by law, the officer or body from whom it is required has to judge in the first instance, whether he should perform it or not. So all inferior tribunals that have power to proceed only when certain jurisdictional facts are established, must judge for themselves according to their best discretion, whether such facts exist. But this does not by any means make their action a case of discretion not to be controlled. Such discretion exists only where there is a decision on some subject which the law has given the power to decide on, with the intent that such decision should be final, unless changed by some direct appeal or review. There the officer exercising his discretion on a matter which the law authorizes him to decide, his decision will not be interfered with by mandamus. But in such case, if he should assume to act upon a matter not entrusted to him, or should decide that he could not act on a matter where the law had clothed

him with the authority, he would be controlled and compelled in the one case to vacate his proceedings, and in the other to proceed. The uncontrolled discretion of such inferior officers or bodies, includes only their discretion upon the very subject matter which by law they may determine, but does not include the decision as to the extent of their own authority. Their judgment upon the matter which by law they may determine, will not be controlled. But their judgment as to what the law has allowed them to determine, will be controlled, otherwise they may assume unlimited powers, or refuse to act even in those cases where they should act.

Thus, in this case the common council had power to remove for "due cause." If some charge had been made against the relator, which, if true, would have been "due cause" of removal, in deciding upon that charge they would have been exercising a discretion and judgment which the law had committed to them, and their decision upon that very point ought not to be interfered with by mandamus. But when a charge is made which is not "due cause" for removal, and the council decide that it is, such decision is not within the limits of their uncontrolled discretion.

That is a construction of the law of the land, and it would be very strange if that duty were devolved finally upon a common council, especially where it involved the extent of their own authority. That duty is clearly imposed on the judicial department, and while refraining from interfering with any discretion which the law vests in any officer or body, we have no doubt of our power or duty, on a proper application, to restrict all inferior officers or bodies, to those limits within which the law authorizes them to act, and to compel them to act within those limits, if they refuse. We were referred on the argument to the decision of this court in the case of the *Attorney General vs. Brown*, 1 Wis., 513, as establishing a principle which should prevent our interfering in this case.

But we think that case entirely in harmony with the views we have expressed. For, laying out of view the fact that in that case it was attempted to invalidate an act of the executive, a co-ordinate department of the government, for which reason the court disclaimed any right to interfere, and which reason certainly does not exist in respect to inferior officers; yet that was also clearly a case of discretion. For the act under which the governor had removed the state prison commissioner, gave him power to remove " whenever he shall believe that the best interests of the state demand such removal."

Where a power to remove for " due cause" is given, the words for " due cause" operate as a limitation on the power. And yet if the authority to determine finally what was " due cause," were given to the same body vested with the power of removal, the limitation would be entirely defeated, and the power of removal absolute. What is " due cause" for the removal of an officer, is a question of law to be determined by the judicial department, and in the absence of any statutory provision as to what should constitute such cause, should be determined with reference to the nature and character of the office and the qualifications requisite to fill it.

It only remains therefore to decide whether the return in this case sets forth that the relator was removed for " due cause." And we think it does not, for the simple reason that it does not set forth for what cause he was removed. There are a number of charges, but the return admits that all except the last, relate to acts or omissions of the relator during a prior term of office. Now, without examining those charges, to determine whether they would show good cause of removal, if occurring during the term, when the removal was sought, which we think very doubtful, yet we think it a sufficient answer to them, that they did not relate to any thing occurring during that term. We do not say that in no case could acts

done during a prior term, justify a removal.   Thus, if, after a treasurer was elected, it should be discovered that during his prior term he had committed a defalcation, and been guilty of gross frauds in the management of his office, it might perhaps be just ground for removal.   But where, as in this case, the charges show nothing more than a mere neglect of some formal duty, which the law may have required, involving no moral delinquency, and which, if violations of duty at all, must have been well known to the appointing power, we do not think where they relate entirely to acts during a prior term, of office, that they constitute due cause in law for the removal of an officer.   For such offences, if offences at all, his re-appointment should be regarded as a condonation.   For, notwithstanding such acts, it does not follow but that after his re-appointment, he may have fulfilled his duties with the strictest propriety.

In relation to the last charge the return avers that it related to acts subsequent to the re-appointment in May, 1859.   But as contended by the relator, this does not necessarily show that those acts did not occur during his prior term, because by the law his new term did not commence until a number of days after his appointment.   But even if it were conceded to relate to acts during the new term, and to be sufficient, if true, to justify the removal, which we do not deem it necessary to determine, it is enough to say in regard to it, that the return does not set forth that the relator was removed for that cause. But after setting forth the charges and the hearing, it avers that the council adopted a resolution removing the relator for " due cause, and for " official misconduct;" but the return does not show for what cause he was removed, or what was the official misconduct.   For aught that is averred, he may have been removed for some cause entirely different from any of these charges.   Such a return is clearly insufficient. *Commonwealth vs. Guardians of Poor*, 6 S. & R., 469; Angell &

State ex rel. Gill vs. Common Council, &c.

Ames on Corporations, 801 ; *Rex vs. Wilton,* 5 Mod. 259 ; 12 Mod., 113 ; *Rex vs. York,* 2 Ld. Raymond, 1566 ; *Rex vs. Doncaster,* Sayer, 39.

The proceedings of such bodies should not be judged with the greatest strictness or nicety, but when they exercise the power of removing an officer, where they have authority only to remove for " due cause," they should proceed in such manner as to be able to return what the precise cause was, that the court may judge whether it was due cause or not.

It does not appear in this case that any other person has been appointed. If this did appear, whether the relator would be bound to proceed by *quo warranto,* in the first instance, it is not necessary to determine.

But it is objected in the return, that the council cannot restore the relator because they have not the power of appointment, but that this power belongs to the school commissioners. But clearly it is not an appointment that the relator seeks, or is entitled to, if he has been illegally removed. If it was to be an appointment by the appointing power, it is very certain that this court could not control its discretion or compel it to appoint any particular person. But this proceeding is based on an entirely different theory. Its claim is that the relator does not need any apointment, but that his title is and has been complete and perfect to the office all the time ; and he asks that the council, which has, without authority, removed him from that to which he is entitled, shall retrace its illegal steps, vacate its proceedings, and remove the obstacles which it has unlawfully placed in his way. He does not ask them to appoint him, but by vacating their unauthorized proceedings against him, to restore him to that to which he is already appointed.

Their return that the power of appointment belongs to the school commissioners, is no answer to this demand. The demurrer is sustained and the peremptory writ awarded.