## Graham v. Jewell, et al.

(Decided July 1, 1924.)

## Appeal from Daviess Circuit Court.

1. Statutes—Title of Act Held Sufficient Compliance with Constitutional Provision.—Acts 1920, c. 36, does not conflict with Constitution, section 51, in that there is no reference in title to removal of county superintendent of schools from office nor to repeal of Ky. Stats., section 4420.

2. Statutes—Not Essential to Repeal of Statute to Refer to Repeal in Title.—It is not essential to repeal of statute to refer to such repeal in title, under Constitution, section 51.

3. Schools and School Districts—Sufficiency of Cause for Removal of Superintendent of Schools a Question of Law for Court.— While courts may not consider merits of a proceeding before a county board of education to remove superintendent appointed for a fixed term or reverse for any error occurring therein, sufficiency of cause is question of law for courts, and necessary steps will be taken to prevent removal where cause alleged is legally insufficient.

4. Schools and School Districts—Strict Formality is Not Required in Proceedings to Remove Superintendent of Schools.—In proceedings before county school board to remove superintendent of schools for cause, strict formalities of legal procedure are not required, but it is essential that findings be supported by some evidence and be based upon sufficient charges, and evidence must be competent and relevant.

5. Officers—Removal May be Had for Acts Committed During Prior Term of Office where Removal Carries Disqualification.—In impeachment or other proceedings for removal, where by statute a removal carries with it a disqualification to hold office in future, a removal may be had for acts committed during a prior term of office, but in absence of such act each term of office is separate and distinct, and evidence should be limited to acts occurring within present term of office, speaking generally.

6. Schools and School Districts—Charges Against Superintendent of Schools Must be Reasonably Definite and Certain.—Charges against school superintendent in proceeding for his removal under Acts 1920, c. 36, should be reasonably definite and certain, and should show what acts are complained to be "incompetent" or

"immoral," though certainty in this respect may be waived by failing to move to make certain.

7. Schools and School Districts—'Incompetency and Immoral Conduct" as Ground for Removal of School Superintendent have no Technical Meaning.—Words "incompetency and immoral conduct" in Acts 1920, c. 36, section 7, relating to removal of county school superintendent, have no technical meaning.

8. Schools and School Districts—Charges Against School Superintendent Held Not to Show Incompetency or Immoral Conduct.—Charges against school superintendent held not to sufficiently charge "incompetency and immoral conduct" within Acts 1920, c. 36, section 7.

9. Schools and School Districts—General Testimony as to Negligent Bookkeeping Held Not to Warrant Removal of School Superintendent.—General testimony of witnesses that bookkeeping was inferior and negligent would not warrant removal of county school superintendent under Acts 1920. c. 36, section 7.

CLEMENTS & CLEMENTS, R. M. HOLLAND, SLACK, BIRKHEAD & SLACK, and BEN D. RINGO for appellant.

WOODWARD, WARFIELD & DAWSON and T. F. BIRKHEAD for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

John L. Graham was elected to the office of county school superintendent of Daviess county, at the November election 1917, and qualified in January following. While serving that term he was on the fifth of March, 1921, re-elected by the county board of education for a period of four years, beginning January 1, 1922, and has thus been serving as superintendent continuously since January, 1918.

Graham seems to be a man of unusual activity and enthusiasm in field work but has not been so successful in keeping the records of his office and in the discharge of other executive duties. His office was inspected and audited during the fall of 1922 by an auditor of the State Board of Education, W. L. Threlkeld, who filed a lengthy report covering the period to July 1, 1922, and which bristled with caustic criticisms.

Considerable notoriety was given the matter and the affairs of the board were investigated by two successive grand juries, and it is intimated in the briefs that two members of the board of education were indicted, though that does not appear in the record, nor is the charge

against them stated. Threlkeld was a witness before the December, 1923, grand jury, and that body reported that they were unable to find any fraudulent or criminal irregularities, but condemned the administration of the county board and recommended that the superintendent resign his office.

Possibly this was an issue in the 1923 election. At any rate a new board of education was then elected. This board was inducted into office the following January. It employed a local accountant, W. B. Miller, who examined the books of the office for the period during which Graham had been in office and reported thereon. The board also had a public accountant from Louisville to audit the books to January, 1923. On the 18th of March, 1924, a petition was filed before the board of education seeking the removal of Graham from office of superintendent.

Due notice of this was given Graham and a hearing thereon assigned for April 1, 1924. Graham appeared by counsel, demurred to the jurisdiction of the board to act in the premises, demurred to the petition as a whole and to each separate paragraph. His demurrers being overruled, he took exceptions and moved that each of the charges be made more specific and definite. This was also overruled and exceptions taken, whereupon he filed response and evidence was heard.

An adjournment was had during the proceeding to April 15, at which time the evidence was completed, and the board indicated that it would sustain the charges and remove Graham from office. Pending that action he filed a petition in equity in the circuit court to enjoin the board from so doing. The issues were completed by appropriate pleadings, and by agreement a transcript of the evidence and proceedings, together with the original exhibits used in the trial before the board of education was filed in the circuit court. The court upon a consideration of the case dismissed the petition and this appeal results.

It is urged that the charges are insufficient (1) in that they are not definite or specific, (2) that the charges were not sustained by any competent evidence, (3) that the proceedings by the board of education were based on an invalid statute and that body was without jurisdiction to hear or determine them. Considering the last question

first, the provision assailed is a portion of chapter 36 of the Acts of 1920, approved March 22, 1923.

It is entitled, ''An act creating a county board of education, prescribing its duties, fixing the tenure of office and compensation of its members; providing for the election of county superintendent by said board; fixing his qualification, compensation and term of office and prescribing his duties and fixing his bond; providing for the election of an attendance officer by the county board of education; providing for a levy of tax for common school purposes in each county; prescribing the duties of the county tax commissioner, the county court clerk, with reference to the assessment of the property, subject to said tax, prescribing the duties of the county board of education and the fiscal court levying said tax, and prescribing the duties of the sheriff in collecting said taxes and making his settlement to the fiscal court; providing the manner of paying his commission for collecting same; prescribing the duties of the fiscal court with reference to making settlement with the sheriff for said tax; providing for employment of teachers; providing for the appointment of district trustees and prescribing their duties.''

The act creates a county board of education and prescribes the qualifications and duties of its members; provides for their election and gives to the board plenary powers in the administration and conduct of public schools of the county and all matters appertaining thereto, including the appointment, direction and control of the officers and teachers.

The parts involved in this case are:

Sec. 10. ''The county board of education of each county shall appoint in 1921 a county superintendent of schools for a term of not more than four years from the first day of January, next succeeding his appointment.''

Sec. 7. '' . . . For incompetency, neglect of duty or immoral conduct the county board of education may suspend or remove from office the county superintendent or any of his professional assistants, any principals, assistant principals or teachers or subdistrict trustees.''

Sec. 15. ''And all laws or parts of laws in conflict with the provisions of this act are hereby repealed.''

Formerly provision was made for the removal of the county superintendent by section 4420, Ky. Statutes, which reads:

"The county court may at any regular term after ten days' notice remove the county superintendent for inability, for habitual negligence of duty or malfeasance in office."

An appeal is also provided to the circuit court and the Court of Appeals.

There is no reference in the title of this act to the removal of the county superintendent from office, nor to the repeal of section 4420, Ky. Statutes. It is insisted that in these particulars the act conflicts with section 51 of the state Constitution, which provides that no law shall relate to more than one subject, and that shall be expressed in the title.

Under the title, this act might have provided that the superintendent should be appointed by the board and serve during its pleasure. If this had been done, necessarily the board would have had the power of removal. Instead it authorized the board to appoint such officer for any length of time not to exceed four years and to remove him for certain causes therein stated. So far as conforming to the title is concerned, we can draw no distinction between the two; either is germane to the general subject. Further, it appears that the act embraces the entire administration of the public schools of the county, and that all of its parts are naturally connected with each other and relate to that general subject; certainly the one assailed is not foreign to the subject. This meets the requirements of section 51. Smith v. Com., 175 Ky. 286; Johnson v. City, 121 Ky. 594; Weber v. Com., 24 Rep. 1726; Diamond v. Com., 124 Ky. 418; Nunn v. Bank, 107 Ky. 262; McGlone v. Womack, 129 Ky. 274; Com. v. Starr, 160 Ky. 260; Weimer v. Com., 124 Ky. 377; Thompson v. Com., 159 Ky. 8; Hyser v. Com., 116 Ky. 410; Eastern Ky. Coal Lands Corp. v. Com., 127 Ky. 667; Phillips v. Cincinnati & Cov. Bridge Co., 2 Met. 219; Com. v. Robinson, 192 Ky. 374; Board of Trustees v. Tate, 155 Ky. 296; Henderson Bridge Co. v. Alves, 122 Ky. 46.

South v. Fish, 181 Ky. 349; District Board of Trustees v. Bradley, 188 Ky. 426; and Exall v. Holland, 166

Ky. 315 are relied on by appellant as authority for the invalidity of the act.

In South v. Fish the subject of the act was first stated generally in the title, but in a later part there was a restriction to the repeal and re-enactment of certain named sections of the former statute. Section 20 of the act attempted to repeal another section not mentioned in the title, and this was held to be invalid on account of the restrictions named in the title.

In the Bradley case the same principle was applied, and as the title was restricted, the act was limited to the subjects enumerated therein.

In the Exall case the act was entitled, "An act defining public roads." It was held that the act was limited to public roads, and so much of it as applied to private passways was invalid. It thus appears that those cases are not in conflict with the above views.

We have heretofore held that it is not essential to the repeal of a statute to refer to such repeal in the title.

> "Section 51 of the Constitution requires that the title shall express the subject legislated upon, but there is no requirement that the title of the act shall also undertake to state what former acts are thereby repealed. Such a requirement would not only be unreasonable, but it would be impracticable and it would lay upon the legislature the duty of weighing the legal effect of prior legislation and determining just what legislation it repealed by the act proposed." Bowman v. Hamlett, 159 Ky. 184.

We conclude that the act is valid and that thereby the board had authority to act in the premises.

The petition charged Graham with incompetency, neglect of duty, and immorality in the conduct of his office, and alleged specifically:

> "(1) The said Graham wrongfully and falsely charged this board of education with postage in sums varying from $30.00 to $80.00 each month from July, 1919, to October, 1920, inclusive, when neither of said sums so charged were properly chargeable in either month named, or at all, and in neither of said months was there properly due or chargeable on that account, any sum in excess of $20.00 as said Graham then knew. . . .

"(2)   The said Graham in 1921 and 1922, unlawfully and wrongfully paid to J. Wes Cook and Joseph Vitteto, . . . sums largely in excess of the amounts legally due or owing to them and each of them. . . .

"(3)   . . .

"(a)   He failed to keep an intelligent and correct record of his official transactions as superintendent of schools and as secretary of the county board of education; he failed to keep an intelligent and correct record of its transactions as he was required by law to do.

"(b)   The said Graham by reason of like negligence, incompetency and immorality, failed to preserve important vouchers and records of his office and of the county board of education which were in his custody as secretary of said board. . . .

"(c)   In that he mutilated, or carelessly and negligently permitted to be mutilated, a record book or books which is and was a part of the records of his office."   (The auditor's report being referred to and filed as a part of the notice.)

Much evidence was introduced on these matters, the greater part of it relating to a period of time prior to Graham's present term of office.

From July, 1919, to October, 1920, a young lady served as secretary of the board under its appointment. Graham permitted her to sign his name and that of the chairman of the board of education to checks drawn against public deposits and it seems did not examine the cancelled checks to ascertain the manner in which she exercised that trust.   She drew large sums of money in checks payable to herself and others marked "for stamps."   The excess of the amounts thus charged over the amounts necessary for that purpose is shown to have been as much as $1,500.00.   Graham did not learn of this until the Threlkeld report.   The young lady was well connected.   Prior to the report she married and moved to another state and Graham made the amount good.

As to the payment of illegal fees to members of the board of education. The statute, section 4399a-4, restricts the compensation of such members to a per diem of $5.00 and expenses in attending board meetings and to a total of $75.00 each per annum.   It appears from the evidence that the members acted as commissioners in examining

and accepting schoolhouses and other work aside from the meetings of the board and allowed themselves fees for such services; that in this way they were paid a total of $455.00 in excess of the statutory limit for the fiscal year 1921-1922 and $97.50 too much for the latter half of that year. The attention of the board was called to its illegality by Mr. Threlkeld, and thereafter the money was refunded by the various members of the board. Graham received no part of this and had no vote in such allowances, but had the right to advise the board and as its chief executive officer and secretary could have refused payment.

Graham held many teachers' institutes over the county to which he invited public speakers who addressed the teachers; the county board of education paid the expenses of these speakers while attending the institutes, amounting in the aggregate to $300.00. It appears that the same practice was followed in many other counties of the state. The Threlkeld report criticised this proceeding and Graham refunded the money thus expended.

The Thelkeld report was filed and considered by the board of education, though Threlkeld was not introduced as a witness, nor his deposition taken, nor was the report verified. There are many references in it to failure to keep proper records of the board meetings and of its business transactions; to the loose manner in which the business was transacted; to mutilation of records and to failure to preserve important papers as well as to matters above alluded to. Graham was examined in reference to it and admitted some of the items and explained them.

Miller and Dorenkamp testified and introduced their reports in evidence. Their testimony established the fact that Graham is not a good office man and that his reports were not kept in approved form, Dorenkamp states: "The records have been kept in a very incompetent manner, and I had to rewrite the books from January 1 to June 30, 1922."

On cross-examination he was asked:

"Q. You found, I believe, as your report states, that bids have been taken for school work and bonds had been taken for the faithful performance of the work by the contractor? A. Yes, sir. Q. Sometimes the minutes were not as full as they ought to have been? A. That is right. Except for the fact that

the minutes were not as full as they ought to have been. Q. I will ask you if the bids, bonds and contracts were regular? A. Yes, sir.''

Miller states that he found no evidence of misappropriation or misuse of funds, and was asked:

"Is there any evidence of neglect of duty on the part of him (Graham)? A. Careless bookkeeping. I don't know what you would term it; that is what it was, bad bookkeeping.''

Both of these witnesses testify that out of the $800,-000.00 handled by Graham during his incumbency, there had been no loss to the county and they are unable to find any misappropriation of funds.

Some of the school teachers engaged in ''electioneering'' for various candidates for the board of education at the 1923 election. It is not claimed that Graham knew of this at the time, but it is charged the teachers were paid their regular salary, substitute teachers being furnished at the time and paid by them. The charge of mutilation of the records consisted of removing from the front of the minute book certain printed pages which in no way affected the record or invalidated it, and no suspicion of wrongdoing is intimated.

C. W. Kimmerling, an architect of the city, testified that under a contract with the board he drew plans and specifications for a school building which was let at $62,-400.00; that litigation arose as to the board's ability to finance it and the building was not constructed; that under his contract he was to receive 3% for the plans and 5% for the plans and supervision if the house was built; that the contract for building was let for the above amount and his bill therefor was $1,876.00; that Graham paid him in two installments; the first installment was for $1,000.00 and he made out a bill for $876.00 for the second, but Graham gave him a check for $1,076.00; that he asked what that meant and Graham told him to pay $200.00 to Wes Cook, a member of the board, and that he did this. This was in June, 1921. The witness testified several times and his conduct and testimony evinced considerable interest.

While on this appeal we can only consider the sufficiency of the evidence of appellees, it is not amiss to say that Graham testified as to these various transactions and contradicted Kimmerling's statement above set out.

He states that a contract was made with Kimmerling to make plans and specifications on a 5% basis and produced the minutes of the board in proof of that fact. This is explained as meaning 3% for plans and specifications and 5% for plans, specifications and superintendence if the house is built. He also shows that the contracts were let for $62,400.00 on the building and $10,600.00 for plumbing and heating, and testifies that Kimmerling was claiming 3% on the total. That he did pay him the two respective checks of $1,000.00 and $1,072.00, and that Kimmerling still claimed $118.00 additional.

He also states that he detected Kimmerling in some dishonest practices in changing specifications to bidders and ceased to do business with him, thereby incurring his enmity.

Kimmerling denies this and both are to some extent corroborated by other evidence. It is further shown that Graham is a good school worker, and a number of witnesses have testified without contradiction as to his high character for morality and integrity.

While courts may not consider the merits of a proceeding such as this or reverse for any error occurring therein, "it is the rule in this and other jurisdictions that where an officer has been appointed for a fixed term, subject to removal for cause, the sufficiency of the cause is a question of law for the courts, and when the cause alleged is legally insufficient the court will take the necessary steps to prevent the removal of such officer or to set aside the removal and restore him to office. Reese v. Hickman County, 187 Ky. 641. State v. Duluth, 53 Minn. 238; Stanley v. Fiscal Court of Hopkins County, 190 Ky. 498; Mack v. Board of Trustees, 187 Ky. 731.

Ordinarily in proceedings by or before tribunals of this character the strict formalities of legal procedure are not required (Baker v. Combs, 194 Ky. 260), but it is essential for the findings to be supported by some evidence and to be based upon legally sufficient charges. Henderson v. Lane. 202 Ky. 610. It requires no citation of authority to add that such evidence should be competent and relevant.

In this respect it is insisted by appellant that the evidence should be limited to acts occurring within the present term of office. A motion to that effect was made before the board and objections taken to all evidence of prior transactions.

In impeachment or other proceedings for removal where by statute a removal carries with it a disqualification to hold office in the future, a removal may be had for acts committed during a prior term of office. State v. Walsh, 79 Ky. 370. McLaughlin v. Shore, 152 Ky. 746. In the absence of such statute it has been held that each term of office is separate and distinct and an incumbent may not be removed for misconduct in another office or for an offense committed prior to his qualification. Speed v. Detroit, 98 Mich. 260; State v. Jersey City, 25 N. J. L. 536; Com. v. Shaver, 3 Watts & S., 338; and there is an intimation to the same effect in Dolan v. City of Louisville, 142 Ky. 818.

Where the incumbent is his own successor there is a conflict of authority on the question. Authorities on both sides of this question are collated in notes to State v. Brickell, 50 L. R. A. (N. S.) 553, and Allen v. Tafts, 17 A. L. R. 279-283, and it seems the weight of authority denies the removal for acts committed in a prior term. The reason is that each term of office is a separate entity; that a removal in the absence of a statute of disqualification does not extend beyond the term; that the people or an appointing board in the selection of an officer may condone past delinquency and re-elect him, and that in the succeeding term he is only liable for delinquencies occurring therein.

The other line of cases is based on the rule, "the object of the removal of a public officer for official misconduct is not to punish the officer but to improve the public service and to free the public of an unfit officer" (State v. Leech, 60 Me. 58), and proceed upon the theory that the officer's acts during the previous term quite as effectually stamp him as unworthy as do those of that he may be serving and that re-election does not condone the offense. See State v. Howse, 124 Tenn. 67, and cases there cited.

We are of the opinion that the first rule enunciated is the safer to follow, though we recognize some exceptions to it. Certainly it cannot be said that the electorate condones an offense of immoral conduct committed by a re-elected incumbent after the election and before qualifying for the new term. As was said in a similar case:

"We do not say that in no case could acts done during a prior term justify a removal. Thus, if after

a treasurer was elected, it should be discovered that during his prior term he had committed a defalcation and been guilty of gross frauds in the management of his office, it might perhaps be grounds for removal." State v. Council City of Watertown, 9 Wis. 254. See also Woods v. Vance, 85 Col. 639.

Also upon a charge of present misconduct evidence of similar delinquencies during a prior term might be admissible as showing intent, motive, or a general manner of procedure or otherwise illustrating the point in issue or corroborating other evidence relating thereto.

As to the claim that the causes of removal were not sufficiently alleged it may be said that the charge in the notice should be reasonably definite and certain; both that the accused may prepare his defense and that it may be determined if the charge falls within the grounds of removal enumerated in the statute. The words "incompetency and immoral conduct" do not have a technical meaning. As said in State v. City of Duluth, 53 Minn. 238, "the last part of the fifth charge accusing the relators generally of being 'incompetent' and 'inefficient' without specifying wherein or in what respect, is too vague and general. . . . These words are so general they may mean anything or everything that might constitute good cause for removal; for example, incompetency might result from physical disability or from lack of integrity . . . hence, while it is not required to go into details yet the charges ought at least to advise the officer in what respect he is claimed to be incompetent and inefficient."

Such is the tenor of our decisions. Supt. of Schools v. Taylor, 105 Ky. 389; Lapsley v. Depp, 171 Ky. 221; Smith v. Lapsley, 23 Rep. 1065. True this may be waived by failing to move to make a general charge definite and certain. Lapsley v. Depp, *supra.* But it appears that in this case appellant was at all times insisting on this right, and as the charges in the notice were both general and specific the trial should have been confined to the specific charges.

Applying the foregoing conclusions to the proceedings and considering only the evidence for appellees, it clearly appears that there is no specific charge in the notice referring to the Kimmerling transaction or to the

institute or election matters, therefore as to these there was no legally sufficient charge, and they cannot be considered as grounds for removal.

Eliminating these matters and taking up the specific charges in their order and considering them in the light of the above conclusions, the first charge—stamp transaction—is insufficient as a ground for removal, as it relates to matters occurring several years prior to the beginning of incumbent's present term. While manifesting carelessness and incompetency at the time of the occurrence the evidence relating thereto does not illustrate any of the transactions occurring during the present term, therefore it is incompetent.

The second charge—unlawful payments to Cook and Vitteto during the years 1921 and 1922. Assuming this to be a sufficient charge and it appearing that some acts complained of occurred during 1922, it may be proper to consider evidence of similar acts prior thereto. On this point the evidence is that the board misconstrued the law and voted fees to the members for services in excess of the amount they were entitled to receive; that their attention was called to the illegality and the individual members of the board refunded the amounts thus obtained. Graham received no part of this and had no vote in making the allowance, although he might have advised against it or refused to issue checks therefor. Certainly this does not constitute immoral conduct, and in view of the prevailing practices theretofore existing, this alone is not sufficient evidence to make a *prima facie* case of incompetency. The third charge is, "that he failed to keep an intelligent and correct record of his transactions as superintendent of schools and as secretary of the county board of education he failed to keep an intelligent and correct record of its transactions as he was required to do." This charge does not point out when or in what respect or particular he failed to discharge those duties, although a motion was made to make it definite in that respect. As said in State v. Duluth, *supra,* this charge is so general that it may mean anything or everything, and is manifestly insufficient.

Also, aside from the Threlkeld report, which is manifestly incompetent as evidence (Com. Ex Rel. Logan, Atty. Gen. v. McCormack, 177 Ky. 474), the only evidence introduced on this point is that of Dorencamp and Miller cited above.

It appears from their evidence that the bookkeeping was inferior and that the minutes of the meeting of the board were not so full as they should have been, and perhaps other records were not kept as well as they should have been. But the auditors were able to determine the condition of the books and of the fact that during the period mentioned, out of the large sums of money handled, the only losses were those above pointed out and which have been repaid. We do not think these general statements on the part of the auditors sufficient evidence to authorize a removal.

As said in Henderson v. Layne, *supra*, "By evidence is meant something of substance and relevant consequence and not vague, uncertain or irrelevant matter not carrying the quality of proof or having fitness to induce conviction."

It follows that the action of the board in removing or attempting to remove Graham cannot be sustained on the charges made and evidence adduced, and the lower court should have granted an injunction restraining the board from so doing as prayed in the petition.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.

SEPARATE CONCURRING OPINION BY JUDGE McCANDLESS.

The above opinion was prepared by me as representing the views of the majority of the court. I concur in both the reasoning and the conclusion except as herein stated.

In the opinion it is assumed that the second charge, viz.: unlawful payments to Cook and Vitteto, was sufficient in law, but the conclusion was reached that the evidence for appellees was insufficient to make out a *prima facie* case. I have great doubt of this. A county superintendent who has served for five years in one of the principal counties of the state, and who has taken a leading part in educational movements, is presumed to be familiar with the laws relating to the administration of school affairs of the county and to be capable of advising the members of the board of education and should exercise his powers as chief executive of the board in refusing to pay illegal fees voted by the members to themselves.

When such an official pays to the members of the board more than double the statutory limit of their fees he is failing in the discharge of his duty. True, no wrong-doing is shown, but such conduct must arise through ignorance of duty or timidity in the discharge of his duty, either of which, to my mind, constitutes some evidence of incompetency and authorized the board to determine that question on its merits, but for reasons to be shown I hardly think the board based its finding on this delinquency.

The really serious questions were the matters involved in the stamp transaction and the Kimmerling matter. The former involved an appropriation of public funds amounting to over $1,500.00, by one under the control of appellant, though it did not affect his moral character.

If the statements of Kimmerling are true they brand appellant with the commission of a public offense involving moral turpitude. The board heard the evidence at length as to both of these matters and evidently considered them, though as we have seen above, as laid, neither charge was legally sufficient to be considered.

If all the charges had been legally sufficient evidence conducing to sustain any one of them would have authorized the board's finding and the court could not interfere.

On the other hand, where, as in this case, a number of charges are preferred, some of which are sufficient and others of which are not, and it is doubtful upon which the board based its findings, especially when from the record it appears probable that the finding was based upon the insufficient charges, I do not think the finding can be upheld. This question is entirely different from that of a demurrer to a pleading of several paragraphs, some of which may be good and others bad. Here each specification is a distinct charge, and jurisdiction to hear and determine one which is legally sufficient does not authorize the consideration of others that are not.

If it is to be held that an official may be charged with different delinquencies, some of which are sufficient and the others insufficient, and evidence introduced as to all, the principal part being as to the insufficient charges, a dragnet might be spread that would nullify the necessity of notice, and in no case could the charge upon which the board based its finding be determined. On the other hand the adoption of these views would not handicap such tri-

bunals, as a separate finding could be made upon each charge and thus be rendered definite and certain, and the rights of the accused fully protected.

Otherwise I concur in the majority opinion.