## Ross et al. v. Columbus Mining Company.

(Decided November 2, 1928.)

### Appeal from Perry Circuit Court.

1. Mines and Minerals.—In action for breach of contract to mine coal for one year at 47 cents per ton, plaintiffs had burden to show making of contract, terms thereof, defendant's breach, and plaintiffs' loss of profits resulting therefrom.

2. Mines and Minerals.—In action for loss of profits resulting from defendant's breach of contract under which plaintiffs were to mine coal at named price per ton, evidence as to amount of coal plaintiffs could have gotten out in remaining months after defendant's breach and profits they would have made therefrom was admissible, and its exclusion was erroneous.

3. Mines and Minerals.—In action for loss of profit resulting from defendant's breach of contract under which plaintiffs were to mine coal at named price per ton, direction of verdict for defendant on ground that plaintiffs should not have quit on defendant announcing cut in contract price, but should have continued to work until intention was carried into effect and defendant refused to pay contract price, was error.

4. Mines and Minerals.—In action for loss of profits by defendant's breach of contract under which plaintiffs were to mine coal at named price per ton, court should determine cost to plaintiffs of furnishing materials and hiring men to do work and amount payable to plaintiffs therefor, and, if evidence shows profit, case

should be submitted to jury to determine whether plaintiffs had contract claimed and profits lost by defendant's breach.

NAPIER & HELM for appellants.

J. W. CRAFT and MORGAN & EVERSOLE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Ross et al. have appealed from a judgment entered on a directed verdict. This is the third appeal of this case, and instead of stating the facts, reference is made to 204 Ky. 274, 264 S. W. 1071, and 218 Ky. 98, 290 S. W. 1052. The burden was on plaintiffs to show the making of this contract, the terms thereof, the defendant's breach of it, and plaintiffs' loss of profits resulting therefrom. To sustain that burden the plaintiffs introduced witnesses to show the making of it, its terms, their operation for five months thereunder, and that then Mr. Stevens (the defendant's officer with whom they claim to have made it) told Ross the company could not pay 47 cents per ton any longer, and would have to cut the price to 35 cents per ton, whereupon the plaintiffs quit. The evidence for the plaintiffs showed they were then getting out 75 or 100 tons per day and were driving entries, laying track, and doing other work to increase the production to 200 tons per day, which plaintiffs' evidence showed the company wanted them to do; that plaintiffs were able to hire men to get out this coal for 35 cents per ton, and were adding men as the work progressed, and had seven or eight men working with them at the time of the alleged breach. Plaintiffs then undertook to show how much coal they could have gotten out in the remaining seven months of the contract period, the cost thereof, and the profits thereon. The court, over exception of the plaintiffs, sustained an objection to this evidence, and the avowal made for plaintiffs was that they could have gotten out 10,500 tons of coal on which they would have made a profit of 12 cents per ton, or $1,260, that they would have made 233 1/3 yards of airway yardage, which would have made them a profit of $350, and a like amount of other yardage, on which they would have made a profit of $175, or a total of $1,785, from which there is to be deducted other items of cost, leaving a net profit to plaintiffs of $1,505. This evidence was admissible, and its exclusion was erroneous. From what we gather from the remarks of the court to the jury at the time this peremp-

tory instruction was given, the court seemed to think that when Mr. Stevens announced his intention to cut the price from 47 cents to 35 cents that the plaintiffs should not have quit, but should have continued to work until this intention was carried into effect, and the defendant had actually failed and refused, after the plaintiffs had produced the coal, to pay them more than 35 cents per ton therefor. Hence he directed the jury to find for defendant. That was erroneous. Courts are by no means in harmony relative to the rights of parties under such circumstances. See 6 R. C. L. p. 1023, sec. 384. Two general rules have been formulated; one is the majority rule, stated in 6 R. C. L. p. 1024, sec. 385; the other is the minority rule, stated in 6 R. C. L. p. 1026, sec. 386. This state adheres to the majority rule. See Globe Fertilizer Co. v. Tenn. Phosphate Co., 85 S. W. 1177, 27 Ky. Law Rep. 636; Wallingford v. Aitkins, 72 S. W. 794, 24 Ky. Law Rep. 1995.

There should be no difficulty in trying this case. This is not an action for personal services, but for profits, and in our last opinion we said:

"The profits for measuring the damages for a breach of this kind of contract for the unperformed period consists in the difference between the contract price and the costs and expenditures of the performer in carrying it out if he had not been prevented from doing so by the breach of the other party." Columbus Mining Co. v. Ross, 218 Ky. 98, 290 S. W. 1052.

We cannot see how we can make this opinion any plainer than our last one, but, in the hope of so doing, will say the inquiry should be, "What would it have cost the plaintiffs to have furnished the needed materials and hired men to do this work?" "What were plaintiffs to be paid therefor?" If these inquiries developed evidence tending to show a profit in the work for the plaintiffs, then the matter should be submitted to a jury for that body to find, from the evidence, whether or not plaintiffs had the contract claimed, and what profits, if any, the plaintiffs lost by defendant's breach thereof.

The judgment is reversed.