## Commonwealth v. Rudman

*Artemas C. Leslie*, District Attorney, and *David B. Fawcett*, Assistant District Attorney, for Commonwealth.

*Leo Kostman*, for defendant.

ELLENBOGEN, J., April 3, 1946.—Defendant in this case pleaded nolo contendere to the charge of misbehavior in office and extortion under color of office. All the offenses relate to overcharges in connection with the taking of marriage applications by defendant; in four cases defendant also performed the marriage ceremony. The marriage license was in all instances issued by the marriage license bureau of the register of wills of Allegheny County.

The testimony presented by the prosecution related to the following six incidents:

1. On July 30, 1945, William C. Wiatt and his bride applied for a marriage license to defendant and paid him the sum of $11 as against $8.75 provided for by the fee bill, or an overcharge of $2.25;

2. On August 2, 1945, Bernard Brooks paid him the sum of $10 as against $8.75, or an overcharge of $1.25;

3. On August 9, 1945, Richard A. Conrad made an application, but defendant made no charge for his services;

4. On August 11, 1945, James T. Murray made application for a marriage license and paid $16 as against a proper charge of $13.75, or an overcharge of $2.25;

5. On September 5, 1945, Joseph G. Lasak paid for his marriage application and license the sum of $3, there being no overcharge;

6. On September 10, 1945, Robert W. Morton paid for his marriage application and license the sum of $8, there being no overcharge.

(In calculating the overcharge we have allowed $0.75 for the two affidavits on each marriage application.)

Thus it appears that there were in all three cases in which defendant made an overcharge for his services. The total of the overcharge in all three cases is $5.75. In each instance defendant pre-dated the marriage application so as to circumvent the three-day waiting period provided for by statute. In connection with these cases defendant was also charged with conspiracy with Owen F. Downs at 311 December sessions, 1945.

Defendant was arrested on these charges on October 16, 1945, and was given a hearing before a justice of the peace on October 21, 1945. He was indicted on December 13, 1945, and pleaded nolo contendere on April 2, 1946.

Under these circumstances the question is here presented whether defendant can be removed from his

office as justice of the peace under article 6, sec. 4, of the Constitution of Pennsylvania. During the commission of the offense defendant was a justice of the peace of Braddock Township. His term expired on the first Monday of January 1946, but he was reëlected to a second term on November 5, 1945. The section, so far as applicable, reads as follows:

"All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime."

This provision is similar to article 6, sec. 9, of the Constitution of 1838, and has been a part of the Constitution of Pennsylvania since 1838.

At the very beginning the section clearly states the purpose which the framers of the Constitution had in mind. It says that:

"All officers shall hold their offices on the condition that they behave themselves well *while in office, . . .*" (Italics supplied.)

This very definitely shows that an officer must behave himself well while he is in office, that is, during the term of his office.

The next clause contains the penal provision. It states what penalty shall be visited upon an officer who does not "behave himself well" while in office. It says that he shall "be removed on conviction of misbehavior *in* office. . . ." Here again we see that the misbehavior must be *"in"* office, *not* misbehavior *prior to* the taking of office. The additional condition that he shall also be removed on conviction of any "infamous crime" merely adds another contingency, upon the happening of which a public officer shall be removed from office. Conviction of any infamous crime is another form of misbehavior of the person while in office, although not necessarily connected with the office. Each term of office is treated as a separate entity.

The purpose of the constitutional provision hardly needs any amplification. Any public officer who misbehaves himself in office or who is convicted of an infamous crime committed during his term of office is not a fit person to hold his public office and therefore should be removed. But this does not apply to an offense committed *prior* to the inception of the term of office. In that case it may be presumed that the voters knew of the offense and condoned the offense. This is especially applicable to our case where the offense of defendant was highly publicized and must have been known to all or most people in the small township in which defendant was elected. Obviously the voters of Braddock Township considered defendant a fit person to be elected to a second term of office as justice of the peace despite the charges made against him a few months prior to his election.

In 43 Am. Jur., sec. 202, p. 45, it is stated that:

". . . the theory as respects acts in a former term is that each term is separate from all other terms, and that the re-election to office operates as a condonation of the officer's previous misconduct to the extent of cutting off the right to remove him therefor."

In 46 C. J., sec. 149, p. 986, it is flatly stated that:

"Offenses committed during a previous term are generally held not to furnish cause for removal, . . ."

Referring to public officers, 29 Cyc. 1410, states that:

"Where removal may be made for cause only, the cause must have occurred during the present term of the officer. Misconduct prior to the present term even during a preceding term will not justify a removal."

An officer cannot be removed for acts committed in a prior term of the same office: 23 Am. & Eng. Enc. of Law (2d ed.) page 445. The misconduct justifying removal must be committed during the current term: 15 C. J. sec. 99, p. 453. It is similarly stated in 43 Am. Jur., sec. 202, p. 45, that:

"According to many authorities, a public officer may not be removed or impeached for acts committed before his entry into office, including acts during a prior term of the same office, or acts of misconduct in another office."

Pennsylvania is in accord with the overwhelming authorities in other States. In Fudula's Petition, 297 Pa. 364 (1929), the Supreme Court decided that under a similar section of the School Code of May 18, 1911, P. L. 309, 321, *"Misconduct prior to the current term, even during the preceding term, will not justify a removal."* The court fully discusses the authorities in other States which involve constitutional provisions similar to those of the Constitution of Pennsylvania. It is there said, on pages 367-368:

"While this question, so far as appears, has not been directly passed upon by an appellate court in this State, it has in like cases elsewhere, and the great weight of authority so strongly sustains appellant's position that we are unwilling to depart from it. Each official term is a separate entity and a citizen whom the electors have chosen to a public office cannot be deprived thereof because of nonperformance or misperformance of duty in some other office or during a prior term of the same office. Referring to public officers, 29 Cyc. 1410 says: 'Where removal may be made for cause only, the cause must have occurred during the present term of the officer. Misconduct prior to the present term even during a preceding term will not justify a removal.' An officer cannot be removed for acts committed in a prior term of the same office: 23 Am. & Eng. Enc. of Law (2d ed.) page 445. The misconduct justifying removal must be committed during the current term: 15 C. J. 453. 'Under penal code (Cal.), paragraph 772, providing for the removal of officers for violation of duty, a sheriff cannot be removed from office, while serving his second term, for offenses committed during his first term': Thurston v. Clark, 107 Cal. 285, 40 Pac. 435.

'The Constitution does not authorize the Governor to suspend an incumbent of the office of county commissioner for an act of malfeasance or misfeasance in office committed by him prior to the date of the beginning of his current term of office as such county commissioner': In re Advisory Opinion to Governor, 64 Fla. 168, 60 So. 337. To like import is Speed v. Common Council, 98 Mich. 360, 57 N. W. 406; State ex rel. Brickell v. Hasty (Ala.) 63 So. 559, also reported with an illustrative note in 50 L. R. A. (N. S.) 553. This case states, what seems to be the correct rule, that 'The acts of an officer during a previous term, though not grounds for impeachment, may be considered in so far as they are connected with or bear upon his general course of conduct during his present term, for the limited purpose of inquiring into his motive and intent as to the acts and omissions charged to him during his second term.' See also Dillon's Municipal Corporations, volume 2 (5th ed.), page 800, section 477; Commonwealth v. Shaver, 3 W. & S. 338, holds that a sheriff is not disqualified from holding his office, because of his conviction and sentence of the crime of bribing a voter; the offense having been committed prior to his election. This, as a common law principle, seems to support the conclusion above stated, although under section 9 of article VIII of the State Constitution bribery by a candidate forever disqualifies him from holding any office of trust or profit in this Commonwealth. So far as called to our attention, the only Pennsylvania decision directly in point is that of Removal of School Directors, 42 York L. R. 157, where President Judge Niles holds that under the School Code school directors cannot be removed from office for misconduct during a prior term. . . ."

The same rule was made in Conant v. Grogan, 6 N. Y. St. R. 322. where the court held as follows (p. 323):

*"The court should never remove a public officer for acts done prior to his present term of office.* To do otherwise could be to deprive the people of their right to elect their officers.

"When the people have elected a man to office it must be assumed that they did this with knowledge of his life and character, and that they disregarded or forgave his faults or misconduct, if he had been guilty of any. It is not for the court, by reason of such faults or misconduct, to practically overrule the will of the people." (Italics supplied.)

To these authorities may be added similar decisions in other States, to wit:

Alabama—State of Alabama ex rel. Brickell v. Hasty, 184 Ala. 121, 63 So. 559, 50 L. R. A. (N.S.) 553;

Arkansas—Jacobs v. Parham (1927) 175 Ark. 86, 298 S. W. 483; Barham v. McCollum (1927) 174 Ark. 1179, 298 S. W. 484;

California—Thurston v. Clark, 107 Cal. 285, 40 Pac. 435;

Florida—Re Advisory Opinion, 64 Fla. 168, 60 So. 337;

Kansas—State ex rel. Boynton v. Jackson, 139 Kans. 744, 33 P. (2d) 118;

Kentucky—Graham v. Jewell (1924) 204 Ky. 260, 263 S. W. 693;

Michigan—Speed v. Detroit, 98 Mich. 360, 22 L. R. A. 842;

Missouri—State ex rel. Schulz v. Patton, 131 Mo. App. 628, 110 S. W. 636; Eagleton v. Murphy, 348 Mo. 949, 156 S. W. (2d) 683;

New Jersey—Campbell v. Police Commrs., 71 N. J. L. 98, 58 A. 84; State ex rel. Tyrrell v. Jersey City, 25 N. J. L. 536; Magner v. Yore, 75 N. J. L. 198, 66 A. 948;

New York—Donnelly v. Roosevelt (1932) 144 Misc. 525, 259 N. Y. Supp. 356; People ex rel. Bancroft v.

Weygant, 14 Hun. (N. Y.) 546; Carlisle v. Burke, 82 Misc. 282, 144 N. Y. Supp. 163;

Ohio—State ex rel. Vogt v. Donahey (1923) 108 Ohio St. 440, 140 N. E. 609; McMillen v. Diehl (1934) 128 Ohio St. 212, 190 N. E. 567;

Oklahoma—State v. Blake (1929) 138 Okla. 241, 280 P. 833; Kingfisher County v. Shutler (1929) 139 Okla. 52, 281 P. 222;

Texas—Reeves v. State (1924) 114 Tex. 296, 267 S. W. 666; State ex rel. Rawlings v. Loomis, 29 S. W. 415; Trigg v. State, 49 Tex. 645;

Wisconsin—State ex rel. Gill v. Common Council, etc., 9 Wis. 254;

Wyoming—State v. Scott (1926) 35 Wyo. 108, 247 P. 699; State ex rel. Loomis v. Dahlem (1928) 37 Wyo. 498, 263 P. 708.

See also Rex v. Doncaster, 2 Ld. Raym. (Eng.) 1564.

It is interesting to note that in Commonwealth v. Shaver, 3 W. & S. 338, the Supreme Court, construing the constitutional provision involved here, held that bribery by the sheriff of a voter previous to his election as sheriff and conviction therefor does not constitute "conviction of any infamous crime". The court there defines "infamous" as used in the constitutional provision as meaning such a crime which renders a person "incompetent to be a witness thereafter", or "disables a man to be a witness or juror". It is there said (p. 342):

"It becomes necessary, now, to ascertain the legal import of this phrase. Mr. Webster, who, in his Dictionary, adopts the meaning given by the Encyclopedia to the word 'infamy', says, 'in law', it means 'that loss of character, or public disgrace which a convict incurs, and by which he is rendered incapable of being a witness or juror'. And accordingly, in Tomlin's law dictionary, in explaining the same term, it is laid down that infamy extends to forgery, perjury, gross cheats, etc., and disables a man to be a witness or juror. It has

unquestionably been clearly settled, that the conviction of a person of an infamous crime, renders him incompetent to be a witness thereafter; but the conviction of a crime, considered not infamous at common law, has never been held, unless by statute, sufficient to disable him from being a witness. See Co. Lit. 6 b; Com. Dig. Tit. Testimony, A. 3, 4; Clancey's Case (Fortescue's Rep. 208); Baring v. Shippen (2 Binn. 165); 1 Phill. Ev. 24, 25; Bushel v. Barrett (Ry. & Moo. 434); S. C. 21 Eng. Com. Law 483. The offenses which disqualify a person to give evidence, when convicted of the same, are treason, felony, and every species of the *crimen falsi*—such as forgery, perjury, subornation of perjury, attaint of false verdict, and other offenses of the like description, which involve the charge of falsehood, and affect the public administration of justice. 2 Hale P. C. 277; Com. Dig. Tit. Testm. A. 3, 4; Co. Lit. 6 b; 1 Phill. Ev. 20, 21, 22; 2 Russell on Crimes, 502, 503."

Under this decision it would seem that the offense involved here is not an infamous crime. But we need not pass upon this question because the offense here involved was committed and prosecution therefor was initiated before the election of defendant to his present term as justice of the peace.

The question whether defendant can be removed from his present office as justice of the peace of Braddock Township for the offense to which he pleaded must be answered in the negative by reason of the fact that all of these offenses *occurred prior to* and their prosecution was initiated prior to the election to and the inception of the current term of defendant as justice of the peace.

It is clear that under the provisions of the Constitution, as interpreted by the Supreme Court in Fudula's Petition, 297 Pa. 364, and under the authorities in the other States, we have no power to remove defendant as justice of the peace and must permit him to remain in office.