STATE ex rel. SCHULZ, Plaintiff, v. PATTON et al., etc., Respondents.

**St Louis Court of Appeals, May 12, 1908.**

1. **OFFICERS: Impeachment: "Cause Shown."** An officer of a municipal corporation can not be removed from office for misconduct unless the misconduct was with respect to the office which he holds; misconduct in a prior office would not justify his removal; by electing him to a second office, the people condoned his offense in the first. The mayor and city council of a city of the third class could not remove the treasurer elect of said city for "cause shown," by showing that he embezzled the funds of the city while acting as collector during a previous term.

2. ———: ———: ———: **Conviction of Former Offense.** If, however, it had been shown that the treasurer had been *convicted* of embezzlement while filling the office of collector during a previous term, this would have been sufficient cause for his removal.

3. ———: ———: ———: **Eligibility.** The fact that under the law the collector who had been guilty of such embezzlement was ineligible to election to another office was not sufficient ground for his removal by impeachment from such other office.

Original Proceeding in Prohibition.

WRIT AWARDED.

*R. L. Wilson* and *Wilson Cramer* for plaintiff.

*Robt. H. Whitelaw* and *M. A. Dempsey* for respondents.

NORTONI, J.—This is an original proceeding in prohibition. The relator is the duly elected, qualified and acting treasurer of the city of Cape Girardeau, a city of the third class. Its charter consists of such provisions as are pertinent, in chapter 91 of the Revised Statutes of Missouri for 1899 (Mo. Ann. St. 1906, chap. 91). The respondents are the mayor and members of

the council of that city.    The office of treasurer of
the city of Cape Girardeau is elective and relator holds
his office in virtue of an election had and held in that
city for city officers in April, 1907.    For several terms
prior to his election to the office of treasurer, the rela-
tor, Gustav Schultz, occupied the office of collector of
the revenue for that city. The charges preferred against
him, and upon which his removal from the office of
city treasurer is sought, all relate to derelictions of
duty alleged to have been committed prior to his incum-
bency of the present office of treasurer, and while he
was serving the city in the office of collector.  The mayor
of the city of Cape Girardeau lodged a complaint against
the relator with the city council, in which it is alleged
that "Gustav Schultz has failed in the proper discharge
of his official duties and obligations as treasurer of the
city of Cape Girardeau; that he has been guilty of of-
ficial misconduct and of conduct grossly scandalous,
and that he is now disqualified from holding the office
of treasurer;" and in support of such charges, alleges
certain specifications substantially as follows: that re-
lator served three terms as city collector immediately
preceding his election to the office of treasurer; that
during said term as such collector, he had collected as
much as three thousand dollars of the public revenue
and appropriated the same to his own use without ac-
counting therefor to the city or depositing the same in
the city treasury, and that he has attempted to con-
ceal the defalcations in that behalf.    Due notice of the
charges having been served upon the relator, he ap-
peared before the council and entered his formal denial
thereto. Thereupon the body resolved itself into a board
of impeachment, and all parties being present, the coun-
cil proceeded to hear the evidence with respect to the
matters charged, to the end of determining the mat-
ter of the removal of relator from the office of treas-
urer for cause.    Suggestions were filed in this court

therefor and a preliminary rule in prohibition was is-
sued to the city council.    Upon proper returns thereto
and motions, the question has been argued.    It is in-
sisted upon the part of relator that the council is with-
out jurisdiction to remove him from the office of city
treasurer for misconduct during his tenure as city col-
lector.    On the other hand, it is argued by learned coun-
sel representing the city that where the statute fails to
specify with a degree of precision the causes for which
a removal may be had, the question is to be determined
by reference to the character of the trust reposed in
virtue of the office and the qualifications essential to
a proper discharge of the duties incident thereto, not-
withstanding the alleged acts of misconduct occurred
during his prior incumbency of another office.    And,
indeed, on principle, it seems that where one has em-
bezzled and converted to his own use public funds given
into his hands as collector, he ought thereby to be dis-
qualified from exercising the franchises pertaining to
the high trust of treasurer.    However, a proper appli-
cation of sound principle seems to enforce and sustain
another conclusion in cases of this character.

The statute under which the proceeding in the
city counsel is had, is as follows:

"The mayor may, with the consent of a majority
of all the members elected to the city council, remove
from office, for cause shown, any elective officer of the
city, such officer being first given opportunity, together
with his witnesses, to be heard before the council, sit-
ting as a court of impeachment.    Any elective officer
may, in like manner, for cause shown, be removed from
office by a two-thirds vote of all the members elected
to the city council, independently of the mayor's ap-
proval or recommendation.    The mayor may, with the
consent of a majority of all the members elected to the
council, remove from office any appointive officer of the
city at will; and any such appointive officer may be

so removed by a two-thirds vote of all the members elected to the council independently of the mayor's approval or recommendation. The council may pass ordinances regulating the manner of impeachment and removals." [Sec. 5761, R. S. 1899; sec. 5761, Mo. Ann. St. 1906.]

It will be observed the statute fails to specify the particular dereliction for which a removal may be had. The proceeding is authorized thereby for "cause shown;" and while it seems that the defalcation in the office of collector ought to be sufficient cause for removal from the office of treasurer, within the contemplation of the statute supra, the weight of authority indicates and supports the law to be that unless the incumbent has been convicted in a court of law prior to such proceeding, the misconduct for which a removal is sought, in the absence of statutory specifications to the contrary, must be misconduct with respect to the execution of the particular office from which the incumbent is sought to be ousted, and such misconduct must constitute a legal cause for removal and affect a proper administration of such office. The fundamental notion involved in this doctrine is that of condonation for past offenses; and it seems there is especial reason for its application with respect to elective offices. This must be true when we reflect that all presumptions go in aid of the incumbent and that the constituency which has seen fit to confer the office by popular election, is presumed to have knowledge of prior derelictions of the present incumbent in the former office, condoned his offenses and subsequently awarded him a new commission by a free expression of the popular will. Indeed, as has been well stated, the door of reform is always open, and it is the part of a Christian people to condone and forgive. There is no restriction whatever in our Constitution or statutes respecting the office involved, upon the power of the people to elect, or for

that matter, the power to appoint any citizen to office, notwithstanding his previous character, habits of official misconduct, and the doctrine of the law predicates upon this thought as fundamental. Adjudications given by the highest and most respectable courts of this country and England on the proposition here under consideration, sustain the view indicated, as will appear by reference to the following cases in point. [Speed v. Com. Council, 98 Mich. 360; State ex rel. v. Com. Council, 25 N. J. L. 536; Commonwealth v. Shaver, 3 Watts. & Serg. Rep. (Pa.) 388; State ex rel. v. Com. Council, 55 N. W. (Minn.) 118; Richards v. Clarksburg, 30 W. Va. 491, 502; People ex rel. v. Weygant, 14 Hun (N. Y.) 546; Rex v. Wells, 4 Burr. 1999; Regina v. Newberry, 1 Q. B. 751; Dillon on Mun. Corp. (4 Ed.), sec. 252 (190); Conant v. Grogan, 6 N. Y. St. Rep. 322; Brackenridge v. State, 27 Tex. App. 513; Thurston v. Clark, 107 Cal. 285; Gordan v. State, 43 Tex. 330; State v. Com. Council, 9 Wis. 254.]

The Am. and Eng. Ency. Law (2 Ed.), vol. 23, at pages 444 and 445, states the law thus:

"*Unofficial Acts in General.*—The misconduct for which an officer may be removed must be found in his acts and conduct in the office from which he is removed, must constitute a legal cause for removal, and must affect the proper administration of his office, but the line of demarcation between acts official and unofficial is not always apparent.

"*Acts before Appointment, in Other Offices, and in Prior Terms of Same Office.*—Ground for removal cannot be based upon acts done before election and not affecting eligibility; nor upon misconduct in another public office, even though the misconduct consisted in the failure to account for moneys received when in such other office; nor upon acts committed in a prior term of the same office, even though the act was done while the officer was suspended, during his previous term,

pending an action to remove him from office at that time.  But this rule does not apply to an unlawful act committed after re-election and while performing the functions of office, but before qualification."

Now while we are unable to discover any Missouri case in which this identical proposition was presented for judgment, it is manifest the courts of this State incline to the doctrine referred to, as appears from obiter remarks not only by the Kansas City Court of Appeals, in State ex rel. v. Walker, 68 Mo. App. 110, 119, but by our Supreme Court as well in the recent case of State ex rel. v. Sheppard, 192 Mo. 497, 511, 91 S. W. 477, in which State ex rel. v. Walker, supra, seems to be approvingly quoted.  In answer to the argument that the very character of the trust incident to the office of treasurer repels the application of the doctrine to this case, where the defalcations are alleged to have occurred by reason of the embezzlement of public funds in the office of collector, it may be said that the Supreme Court of New Jersey perceived no reason for the distinction because of the sacred trust, in the case of State ex rel. v. Jersey City, supra.  In that case, it was shown that an alderman was entirely unfitted for the trust of a legislator because of having received bribes while occupying the position of a member, from which he was expelled by the city council.  The court gave judgment to the effect that the offense so committed during the prior tenure, was no reason why he should not be retained as a member of that body after a subsequent election thereto.  [See Dillon on Mun. Corp. (4 Ed.), sec. 238 (190).]  Indeed, it was there adjudged there was no authority residing in the council to expel him, after a subsequent election, for having received bribes while occupying the same position as a member of a former council.  And so too, the Supreme Court of New York, in People ex rel. Weygant, 14 Hun (N. Y.) 546, adjudged that although a former city col-

lector had failed to account for certain city taxes coming into his hands while occupying the office of collector, it was no reason for his expulsion from the office of city marshal to which he had been subsequently appointed. And it has been determined that if the same person holds two offices, misconduct with respect to one will authorize the removal from that office but not from both, unless the offense charged is against the duty of both offices, in which case the removal may be had from both. [Rex v. Chalke, 1 Ld. Raym. 226; s. c., Mod. 257; Rex v. Doncaster, 2 Ld. Raym. 1566; s. c., 1 Bernard, 265; Rex v. Wells, 4 Burr. 1999; Rex v. Harris, 1 B. & Ad. 936.] The thought suggested on this phase of the doctrine and its application to the facts of the cases cited, is indeed a proper subject for legislative consideration, but until that authority has seen fit to prescribe such reasons for removing a person from exercising the franchise of a public office to which he has been elected subsequent to the misconduct, the courts are without authority to proceed.

However this may be, the inquiry arises as to how and under what circumstances a corporation may proceed to discharge a derelict public official as for cause in cases which so forcibly appeal to the conscience as the one now under consideration. While the question is not before the court for determination in the present proceeding, it may be said that in the leading case of The King v. Richardson, the point having been decided that a corporation, in the absence of an express grant of authority, was possessed of the incidental power to make a by-law to remove officers for *just cause,* Lord Mansfield classified the offenses which would justify the exercise of the power, and his judgment therein has been followed both in England and this country. According to the classification of Lord Mansfield in that case, there are three sorts of offenses for which an officer or corporator may be discharged. First: such

as have *no immediate* relations to his office, but are themselves of so infamous a nature as to render the offender unfit to execute any public franchise.    Second: such offenses as are only against his oath and the *duty of his office as a corporator,* and amount to a breach of the tacit condition annexed to his franchise or office.    Third: offenses of a mixed nature, such as offenses not only against the duty of his office, but also as a matter indictable at common law.    In offenses of the first class, the removal can only be made when there has been a previous conviction in a court of law and a motion will not be sustained by a subsequent conviction.    In offenses of the second class, the corporation may try, and if the charge is established, remove without any previous or other proceeding in the courts. In offenses of the third class, it is said the English Judges have differed on the point whether the officer may or may not be removed before conviction in a court of justice.    [1 Dillon, Mun. Corp. (4 Ed.), sec. 251 (189); Rex v. Richardson, 1 Burr. 517-538; Rex v. Liverpool, 2 Burr. 723.]    It therefore appears that the offense of embezzlement in the office of collector, alleged in this case, being of a nature so infamous as to render the offender an unfit person to execute a public franchise, his removal by the council might be had as "for cause shown" after trial and conviction in the courts for such dereliction in the prior office.    That is to say, a conviction in the courts would certainly constitute cause for removal even though the offense was misconduct in the prior office.    In the very nature of the case, the power to remove as for cause in such circumstances, ought to and does reside in the corporation, otherwise in case of conviction and imprisonment of the derelict official, public business would cease for the want of an incumbent to execute the office. It is to be noted that the second classification of Lord Mansfield; that is, the offense against the oath and

duty of the office, which he says authorizes a corporation to remove the offender for cause in virtue of its inherent power at common law; is identical with the doctrine of the law which now obtains to the effect that in the absence of a prior conviction, the guilty official may be removed for cause only in those cases where the derelictions relate to the execution of the present office.

There are high and respectable authorities, however, which indicate or declare a doctrine contra to that above stated. The case of State ex rel. v. Common Council, 9 Wis. 254, adheres to the doctrine that misconduct during a prior term will not be regarded as due cause for removal from the present term and disposes of the case and gives judgment upon that principle. Nevertheless, in the discussion to be found in the opinion, it is indicated that because of the high character of the trust reposed, a treasurer might possibly be removed from his present term for defalcations committed during his prior incumbency of the same office. The question was not in judgment. It was not decided by the court nor was it asserted as the law.

A notable case is that of Judge Barnard, who was tried before the court of impeachment at Saratoga. In that trial, a motion was made to strike out certain charges relating to offenses alleged to have been committed by the judge during a prior term of office. Judge Barnard having been elected, his counsel argued such reelection had condoned the prior offenses and that he had come anew into the possesion of his office, approved by the judgment of the people and certified as capable and worthy to occupy and discharge the duties of a justice of the Supreme Court. The motion was overruled and a conviction was had as well for the offenses committed during the prior term as during the term then existing. [See vol. 1, Trial of Barnard, Court of Impeachment, 147, 151 et seq.] This adjudi-

cation, however, is not in accord with the great weight of authority on the identical proposition involved.

The case of People ex rel. Burby v. Common Council, 85 Hun (N. Y.) 601, appears on a first reading also to be an authority to the same effect.    Upon an attentive consideration of the case, however, it will appear that the misconduct arising from a stipulation which was held to have been wrongfully entered into by the city attorney during a prior term of office, was continued over into his present term, by the city attorney having suppressed facts and made false statements in his report to the city council with respect to such stipulation and the disposition of the litigation therein involved, and his conviction was therefore had because of the misconduct during his present term.

And so too, the case of State ex rel. Billon v. Bourgeois, 14 So. Rep. (La.) 28, although one of expulsion from present office for misconduct during a prior term, the case turned upon and was determined by a construction of the Constitution of the State of Louisiana which authorized the judgment of the court there given.   It therefore appears that the two cases last above cited, in no sense militate against the doctrine asserted by the weight of authority heretofore adverted to.

It is suggested, however, that inasmuch as relator was in default to the city as collector at the time of his election to the office of treasurer, he was thereby rendered ineligible to the office of treasurer and should therefore be removed.    Now this argument predicates upon a provision to be found in section 5775, R. S. 1899 (Mo. Ann. St. 1906, sec. 5775), which section is parcel of the charter of the city of Cape Girardeau; that is to say, that section disqualifies any person from being elected or appointed to any office in the city who shall then be in arrears thereto on account of a defalcation in office.    The question thus presented is one of qualification in the first instance and therefore suggests de-

fect of title, rather than dereliction of duty or misconduct in office.    This being true, it relates in no manner to the question of removal "for cause shown."  The "cause" contemplated by the statute supra, under which the proceeding looking to a removal was being had, relates entirely to the execution of the office, as will appear by reference to the authorities supra, rather than to a matter of the determination of title to office by reference to original disqualification; for it is certain the election of a person to an office who does not possess the prescribed qualifications therefor, confers upon him no right or title to the office.    [State ex rel. v. Newman, 91 Mo. 445, 3 S. W. 849; 1 Dillon, Mun. Corp. (4 Ed.), 196 (135).]    And in such circumstances the remedy, if any, would be by *quo warranto,* under which the right to exercise the franchise would be determined.    [State ex rel. v. Vallins, 140 Mo. 523, 141 S. W. 887.]    Upon principle, it is clear a corporation is without power at common law or under the statute for mere cause, to remove an officer or corporator on a mere defect of title.    [Rex v. Lyme Regis, 1 Doug. Rep. 79, 80; 23 Am. and Eng. Ency. Law (2 Ed.), 445.]

For the reasons given, the rule in prohibition will be made absolute.    It is so ordered.    *Bland, P. J.,* and *Goode, J.,* concur.