BLANTON WINSHIP, GOVERNOR OF PUERTO RICO, ETC., Petitioner and Appellant, v. MUNICIPAL ASSEMBLY OF GUAYAMA, Respondent.

No. 6. Argued April 8, 1938.—Decided April 26, 1938.

*B. Fernández García, Attorney General, Jesús A. González, Assistant Attorney General, and E. Córdova Díaz, Deputy Attorney General for appellant. J. Valldejuli Rodríguez for the Mayor of Guayama, intervener.*

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On February 9 last the Governor of Puerto Rico, through the Attorney General of the Island, filed with the Secretary-Reporter of this Supreme Court a petition of which the opposing party was notified, appealing from the decision of the Municipal Assembly of Guayama of January 31, 1938, of which the Governor was notified by his attorney, the Attorney General, on February 5 following, whereby the said assembly ordered the dismissal of the impeachment proceeding brought before it against the mayor of the municipality on the basis of charges made by the Governor.

On February 11, 1938, this court ordered the assembly to send up the record of the impeachment proceeding within the term of five days. The order was served on the following day and the record was sent on the 14th. That same day the mayor, through his attorney, filed a motion to dismiss the appeal, which was opposed by the appellant and argued by counsel for the two parties on February 21, 1938.

Notwithstanding the filing of the motion to dismiss, on February 15 the appeal was set for hearing on March 14. The motion to dismiss, which practically covered the entire case, was not decided until March 24, on which date it was denied, and the hearing of the appeal was held on March 28, 1938.

At this hearing counsel for the mayor raised the jurisdictional question of whether this court could act since the hearing had not been held within the term fixed by law. The parties were permitted to present memoranda on the said

question and the last brief—that of the mayor—was filed on the 8th of this month, on which date the case was definitely submitted for our consideration and decision.

 The applicable law is found in the part of section 29 of Act No. 53 of 1928 (Session Laws, p. 334), as amended by section 9 of Act No. 98 of 1931 (Session Laws, p. 594, 610), which says:

"The Supreme Court shall hold the corresponding hearing within a term which shall not exceed twenty days after notice was served on the appellee, and it shall decide the case within a term of not more than thirty days after its submission."

The question was first raised by the mayor on March 28 last and in spite of the time he had until then, and later until April 8, he has not strengthened it with a single precedent or with applicable authorities.

Provisions like those above copied are directive and not mandatory. They express the intention of the lawmaker on the necessity which exists for taking action with due rapidity in order that the interests of the public may not suffer and that government administration may function unimpeded as quickly as possible, and the courts should observe and comply with them to the limit, but this does not mean that they lose their jurisdiction because the term fixed has expired. See *People* v. *Ríos,* 43 P.R.R. 56, *People* v. *Rivera,* 42 P.R.R. 897, and *People* v. *Hernández,* 30 P.R.R. 342, 719. The statute itself does not provide for the dismissal of the appeal in the absence of just cause to the contrary, as in the case of section 448 of the Code of Criminal Procedure, nor does it provide that the court shall lose its jurisdiction if the hearing is not held within the twenty days after notice is served on the appellee.

In this concrete case, if the date of service of the notice of appeal—February 9—is taken as that of the notice of which the law speaks, it will be found that the court took action two days later and that the hearing on the motion

of the mayor to dismiss the appeal was set for and held on February 21. And it may well be said that at the hearing of the motion—which went into the merits—the case was heard on its merits. Moreover, the setting of the appeal for hearing was made on February 15, and the mayor was notified on the 16th, that is, within the term of twenty days counting from the 9th, and the mayor did not object. It has not been shown or even alleged that he has been prejudiced.

■ What did the assembly decide? On January 31, 1936, it granted the two motions to dismiss which the mayor filed in the impeachment proceeding, on the following grounds:

The first ground:

"Whereas, an examination of the said communication of the Governor of Puerto Rico, which does not establish specific and personal charges against the Mayor, and only limits itself to transmitting to this Assembly the Auditor's report, shows on its face that all the facts reported by the Insular Auditor refer to the preceding public administration of this municipality, which expired at the elections of November 3, 1936.

"Whereas, it is known to the Members of this Assembly that the same questions were discussed by the persons cited in the report of the Insular Auditor in public speeches to the electorate of this city, in which the persons cited in the communication of the Hon. Governor made the charges public to the electorate, when the present Mayor, Francisco Porrata Doria, was a candidate for re-election to the Mayoralty of this City.

"Whereas, the electorate of this city and of this municipal district re-elected the said Mayor, Francisco Porrata Doria, for the present administration.

"Whereas, such action by the will of the people rejected the charges made by the persons mentioned in the report of the Governor of the Island, and again placed its confidence in the Hon. Francisco Porrata Doria, as an assertion of the will of the electorate.

"Whereas, this action implies that the people rejected such charges and made Francisco Porrata Doria again worthy of its confidence.

"Whereas, this Municipal Assembly has carefully studied the allegations of the attorneys for the defendant Francisco Porrata Doria, carefully studying the pertinent cases and especially the fol-

lowing: *Speed* v. *Common Council of Detroit*, 98 Mich. 360, 57 N. W. 406, and 19 R.C.L. 935, in which the following was decided:

" 'Misconduct for which an officer may be removed must have been committed since his appointment to the office.' See also McQuillan, Municipal Corporations, vol. 2, pp. 1220 and 1221 in which the following is said: 'The doctrine of condonation of past offenses is often judicially applied to elective officers, and hence it is sometimes said that an officer cannot be removed for an offense committed during a former term in another office for which he has not been convicted.' *State* v. *Patton*, 131 Mo. App. 628, et seq. and 110 S. W. 636. In the case of *People* v. *Board of Fire Commissioners*, 6 N. Y. St. 658, the following was decided: 'Hence, it is obvious that mere political bias or personal dislike of the officer having the power of removal is not a cause.' See also the case of *Gillet* v. *People*, 8 Colo. App. 553, reported in McQuillan, Municipal Corporations, and in which the following, which is pertinent, is said:

" 'So, ordinarily, particular acts of usurpation of power on the part of the Mayor, having no legal effect on the affairs of the city, are not sufficient grounds for removal.' "

And the second:

"Whereas, this Assembly has carefully studied the questions raised, and has read carefully the communication of the Hon. Governor of Puerto Rico, in which he limits himself to transmitting to this Assembly the report he received from the Auditor of Puerto Rico, without any specific charges having really been preferred against the Mayor of Guayama by the Hon. Governor of Puerto Rico or the Insular Auditor in his capacity as a private citizen, and it does not appear that that report has been adopted by the Governor as his own and sent under oath to this Assembly as his charges against the Mayor of Guayama.

"Whereas, it is a requisite of the law and the cases that the charges be specifically preferred by some private person, by a member of the Assembly, or by the Governor of Puerto Rico, and these requirements are not met by the communication of the Insular Executive, of October 29, 1937."

After a careful examination of the original record and of the acts, statements, and arguments before this Supreme Court, we believe that the assembly was not justified in the attitude it assumed and in the action that it finally took.

The statute regulating the case, which is section 29 of the Municipal Law in force already cited, does not require that the Governor swear to the charges, and this is not an unusual practice, since a general law such as the Code of Civil Procedure provides in section 118 that where the complaint is verified, the answer must be verified, and yet expressly exempts from this requirement defendants who are insular officers acting in their official capacity.

■ Nor do we believe that the action of the Governor may be interpreted as merely advising the assembly of a report of the Auditor relative to the conduct of the mayor. The letter says:

"La Fortaleza
Puerto Rico

"October 29, 1937.
"Hon. the President of the Municipal Assembly,
"Guayama, P. R.
"Sir:

"I have received a communication from the Office of the Auditor of Puerto Rico, in which charges are made against the present Mayor of Guayama, Mr. Francisco Porrata Doria, in the exercise of his office. There follows a review of them which I am making for you in order that the Hon. Municipal Assembly may follow the proceeding fixed by section 29 of Act No. 98, approved on May 15, 1931, which reads as follows:

(The section is copied)

"*First charge.*—That without any express authority from the Municipal Assembly of Guayama, P. R., the Mayor Francisco Porrata Doria settled civil action No. 4420, brought by the Municipality of Guayama against Esteban Figueroa, in the Municipal Court of Guayama, 'Municipality of Guayama, plaintiff v. Esteban Figueroa, defendant.' In this case property sufficient to cover the sum claimed by the Municipality was attached and sold for $130.00 and adjudicated to the brother-in-law of the Mayor Francisco Porrata Doria, Mr. Gabriel Torres Laborde.

"*Second charge.*—That about the year 1935, with the intention of leasing it to the PRERA, the Mayor Francisco Porrata Doria ordered the construction of a house at the expense of the Municipality of Guayama, 30 × 30 feet, in the Guamaní ward of Guayama,

which was constructed by Luis Anés Rodríguez to the point of finishing the frame. This house had been constructed up to that point with lumber paid for by the Municipality of Guayama, taken by Luis Anés Rodríguez by order No. 233–69, on April 8, 1935, from the firm of J. R. Nieves, Guayama Branch, all of which was according to the orders of the Mayor Francisco Porrata Doria, according to affidavit 519, subscribed by Luis Anés Rodríguez before notary Luis Domínguez Rovira, on February 17, 1937, which is attached. That the same house frame, by express order of the Mayor Francisco Porrata Doria, was taken down by carpenter Nieves Cortijo of Guayama, and his helper Angel Rodríguez and reconstructed in the 'La Fuente de Jobos' ward as a club house for the Socialist Party of Guayama, and is thus known, it being the same house which is described in deed No. 100, executed in the city of Guayama on October 14, 1936, before Notary W. Ramos Vázquez, in which Mr. and Mrs. Haddock Nieves stated that they had built it. While it is true that this house was built upon a frame owned by the Municipality of Guayama, it is equally true that its construction was continued by means of assessments and collections, until it was finished, for use as a club house for the Socialist Party.

*"Third charge.*—That the mayor Francisco Porrata Doria constructed a house called 'La Pesca' on the seashore, in the 'Las Mareas' ward of Guayama, with materials belonging to the Municipality of Guayama, P. R. and there established a fish business. That later he ordered that house to be torn down and reconstructed on San Rogelio Street in Guayama, at a spot called 'Hoyo Inglés', and from that time on it has been used and is now used as a club house for the Socialist Party of Guayama, P. R. The lot on which the said house was placed appears to have been granted by the Municipality of Guayama about the year 1910 to the spouses **Fernando** Haddock and Mercedes Nieves, of Guayama, P. R. who appear to be the owners of the reconstructed house, according to deed No. 101, entitled 'Certificate of Construction', executed in Guayama, P. R. before notary W. Ramos Vázquez on October 14, 1936.

*"Fourth charge.*—That about the year 1933, the Mayor of Guayama, Francisco Porrata Doria, constructed a house in the Borinquen ward, on Fidelidad Street of the said Municipality, for the purpose of using it as a club for the Socialist Section of Guayama, and for that purpose obtained money and the personal services of the members of the said club and the house was constructed. That the same was used as a Socialist club from the time it was built, the

Mayor Francisco Porrata Doria installing electric service in it from the date of its construction, causing the meter to appear in the name of Alejandro Ortiz Resto, a resident of Guayama, and making a deposit of $1.00 to the Municipality of Guayama to guarantee payment of the service. That from March 1934 to November 1936, in view of the fact that the current consumed was not paid for and that the amount due was considerable, amounting to a little more than forty dollars, Alejandro Ortiz Resto informed the Mayor and the Municipal Secretary-Auditor, Messrs. Francisco Porrata Doria and R. Navarro, that the Committee of the Socialist Section of Guayama, P. R. ought to pay the debt for electric current and release him because it prejudiced him to appear in the books as a debtor to the Municipality for electric current. That the said officers immediately replied that they would take care of the matter in question. That about four months ago Alejandro Ortiz Resto wished to instal electric light in his private residence and the Municipality of Guayama denied his petition because the said gentleman appeared on the books as owing a considerable sum of money for electric current.

"*Fifth charge*.—That the Mayor of Guayama, Francisco Porrata Doria, withheld the payment of the payrolls of the workers and employees of the Municipality, for the purpose of forcing them to sell their credits against the Municipality to Jacinto Valentín, janitor of the town hall in Guayama, at a discount of from 40 to 50 per cent, and once this was done the Municipal Secretary-Auditor paid the amount of the said credits to Jacinto Valentín.

"*Sixth charge*.—That the Mayor Francisco Porrata Doria bought a truck from Smallwood Brothers, Guayama Branch, P. R. and registered the said vehicle in the name of Eusebio Serrano, for commercial purposes. That, the truck being in need of tires, there were used during several months, by order and authority of the Mayor Francisco Porrata Doria, four truck tires owned by the Municipality of Guayama, P. R. and belonging to the trucks which were used for public cleaning in the local Department of Health.

"*Seventh charge*.—That the Mayor Francisco Porrata Doria, incurring in grave administration negligence, and knowingly, allowed Santos Gutiérrez to destroy part of the fence of the rural school house 'Línea Capó', and to run his fence on and occupy with the house he built there several meters of the lot of the said school which belongs to the Department of Education. This fact was reported to the Municipal Engineer, then Mr. Bruno, who went to the site

and ordered the destruction of the fence to be stopped, but the Mayor Francisco Porrata Doria, who was called by Mrs. Gutiérrez and informed of the matter, told Mrs. Gutiérrez to pay no attention and to continue her work. That on the same date it appears that a donation of $25.00 was made to the Municipality of Guayama by Santos Gutiérrez.

"I inform you, in addition, that if your Municipal Assembly does not proceed within ten days following receipt of this communication, to consider and decide the charges mentioned, in accordance with the procedure provided by the Municipal Law in these cases, I shall proceed in accordance with the provisions of Section 29 copied above.

"Respectfully,

. " (Sgd.) Blanton Winship,<br>"Governor of Puerto Rico."

The assembly itself correctly interpreted the Governor's communication originally when it brought the proceeding which it entitled *"In re: Impeachment of the Mayor of Guayama, Hon. Francisco Porrata Doria."*

■ As to the conclusion at which the assembly arrived with regard to the acquittal of the mayor by the electorate itself, inasmuch as the acts imputed to him were committed in his past administration, the cases are indeed in conflict. See the monograph on this question which appears in 17 A.L.R. 279.

This question is a new one in Puerto Rico. Up to this time this court has not had the opportunity of passing on the same. And now in weighing the reasons adduced on one side and the other, the sounder and more effective doctrine seems to us to be that which holds that the impeachment lies. As the Supreme Court of Iowa said in the case of *State* v. *Welsh,* 109 Iowa 19, 79 N.W. 369, "The very object of removal is to rid the community of a corrupt, incapable, or unworthy official. His acts during his previous term quite as effectually stamp him as such as those of that he may be serving. Re-election does not condone the offense. Misconduct may not have been discovered prior to election, and,

in any event, had not been established in the manner contemplated by the statute."

As to the gravity of the charges for the purposes of whether or not they are sufficient for removal of the officer, it will be sufficient to refer to them since they have already been copied. They speak for themselves. They reveal a continuity in certain practices of using property of the community not for its benefit but for the personal profit or the profit of a political party, which are not compatible with the proper exercise of an office of trust, and other acts, such as those specified in the first, seventh, and fifth charges, show an officer who does not comply with the law and uses his office to permit a systematic and unlawful exploitation of the employees of the municipality as to their salaries. Such charges, if proved, constitute grounds more than sufficient for removal.

For the reasons stated, and it being unnecessary to consider and decide the fourth of the errors assigned which is as follows: "The Municipal Assembly of Guayama erred in permitting Assemblyman Santiago Porrata Doria, brother of the Mayor Francisco Porrata Doria, to take part and vote in this proceeding," and which we are inclined to believe was also committed, we must reverse the two resolutions of the Municipal Assembly of Guayama of January 31, 1938, which in fact are but one, since both order the final dismissal of the impeachment proceeding and acquit the mayor of the charges preferred against him, and return the record to the said assembly for further proceedings not inconsistent with this opinion.