BLANTON WINSHIP, GOBERNADOR DE PUERTO RICO, querellante y apelante, *v.* ASAMBLEA MUNICIPAL DE GUAYAMA, recurrida.

Núm. 6.—*Sometido:* Abril 8, 1938. *Resuelto:* Abril 26, 1938.

*Hon. Procurador General B. Fernández García, Jesús A. González,
Procurador General Auxiliar y E. Córdova Díaz, Subprocurador
General Auxiliar,* abogados del apelante; *J. Valldejuli Rodríguez,*
abogado del Alcalde de Guayama, interventor.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del
tribunal.

El nueve de febrero último el Gobernador de Puerto Rico
por medio del Procurador General de la Isla archivó en la
Secretaría de esta Corte Suprema un escrito, notificado a la
parte contraria, apelando de la resolución de la Asamblea
Municipal de Guayama de enero 31, 1938, notificada al Gober-
nador en la persona de su abogado el Procurador General en
febrero 5 siguiente, por virtud de la cual dicha asamblea de-
cretó el archivo y sobreseimiento del *impeachment* ante ella
seguido contra el alcalde de la municipalidad a virtud de car-
gos formuládosle por el Gobernador.

El once de febrero, 1938, esta corte ordenó el requerimiento
de la asamblea para que dentro del término de cinco días
enviara el récord del *impeachment*. Fué requerida en efecto
al día siguiente y el catorce remitió el récord. Ese mismo
día el alcalde por su abogado presentó una moción de deses-
timación del recurso que fué impugnada por el apelante y
vista con asistencia e informe de los abogados de ambas par-
tes en febrero 21, 1938.

No obstante la presentación de la moción de desestimación,
la vista del recurso se señaló en febrero quince para marzo
catorce. La moción de desestimación que prácticamente com-
prendió el caso en su totalidad no fué resuelta hasta marzo
24, en cuya fecha se declaró sin lugar, celebrándose la vista
del recurso en marzo 28, 1938.

En el acto de la misma el alcalde por medio de su abo-
gado suscitó como cuestión jurisdiccional la de que este tri-

bunal no tenía facultad para actuar por no haberse celebrado la vista dentro del término fijado por la ley. Se permitió a las partes que presentaran memoranda sobre dicha cuestión archivándose el último escrito—que fué el del alcalde—el ocho de abril actual, fecha en que quedó el caso sometido definitivamente a nuestra consideración y resolución.

■ La ley aplicable está contenida en la parte del artículo 29 de la Ley núm. 53 de 1928 (pág. 335), como quedó enmendado por la sección 9 de la Ley núm. 98 de 1931, Leyes de ese año, págs. 595, 611, que dice:

"La Corte Suprema deberá celebrar la vista correspondiente dentro de un término que no excederá de veinte días inmediatamente después de haberse emplazado la parte recurrida; y deberá resolver el caso dentro de un término que no excederá de treinta días después de sometido."

La cuestión fué levantada por el alcalde por primera vez en marzo 28 último y no obstante el tiempo que tuvo hasta entonces y luego hasta abril 8, no la ha robustecido con un solo precedente ni con jurisprudencia aplicable.

Disposiciones de la naturaleza de las transcritas, son directivas, no mandatorias. Expresan el pensamiento del legislador sobre la necesidad que existe de que se actúe con la rapidez debida a fin de que los intereses públicos no sufran y las administraciones gubernamentales funcionen sin embarazo lo más pronto posible, y los tribunales deben atenderlas y cumplirlas hasta el límite, pero ello no quiere decir que pierdan su jurisdicción para actuar porque el término fijado pase. Véanse los casos de *El Pueblo* v. *Ríos,* 43 D.P.R. 60, *El Pueblo* v. *Rivera,* 42 D.P.R. 934 y *El Pueblo* v. *Hernández,* 30 D.P.R. 774. La propia ley no ordena el sobreseimiento del recurso a no ser que exista justa causa en contrario, como en el caso del artículo 448 del Código de Enjuiciamiento Criminal, ni prescribe que la corte pierda su jurisdicción si no se celebra la vista dentro de los veinte días después del emplazamiento de la parte recurrida.

En este caso concreto, si se toma la fecha de la notificación del escrito de apelación—febrero 9—como la del emplazamiento de que habla la ley, se encontrará que el tribunal tomó acción dos días después y que presentada por el Alcalde una moción de desestimación del recurso, su vista fué señalada para y se celebró el veinte y uno del propio mes de febrero. Y bien puede decirse que al celebrarse la vista de la moción —que iba a los méritos—se vió el caso en su fondo. Además, el señalamiento de la vista se hizo en febrero quince y se notificó al alcalde el diez y seis, o sea dentro del término de veinte días contados a partir del nueve y nada objetó el alcalde. No se ha demostrado, ni alegado siquiera, que se haya sufrido perjuicio.

██ ¿Qué resolvió la asamblea? El 31 de enero de 1936 declaró con lugar dos mociones de archivo y sobreseimiento que le presentara el alcalde en el procedimiento de *impeachment,* por los siguientes fundamentos:

La primera:

"Por cuanto, examinada la citada comunicación del Gobernador de Puerto Rico, que no establece cargos específicos y personales contra el Alcalde, y sólo se limita a transmitir a esta Asamblea el informe de Auditoría, de su faz aparece que todos los hechos informados por el Auditor Insular se refieren a la extinta administración pública que de este Municipio expiró en las elecciones del 3 de noviembre de 1936.

"Por cuanto, es de conocimiento de los Miembros de esta Asamblea que las mismas cuestiones por las personas que se citan en el informe de Auditoría Insular, fueron discutidas en las tribunas públicas, ante el electorado de esta ciudad, en que las personas que se citan en la comunicación del Hon. Gobernador hacían públicas las acusaciones al electorado, cuando el actual Alcalde, Francisco Porrata Doria, era postulado para un nuevo término en la Alcaldía de esta Ciudad.

"Por cuanto, se convenció el electorado que todas esas imputaciones eran gratuitas, y que el candidato Sr. Porrata Doria, era sólo víctima de los apasionamientos políticos, siempre encendidos en épocas eleccionarias.

"Por cuanto, el electorado de esta ciudad y de este distrito muni-cipal volvió a elegir al mencionado Alcalde, Francisco Porrata Doria para la actual administración.

"Por cuanto, tal actuación de la voluntad popular rechazó las imputaciones de las personas mencionadas en la carta informe del Gobernador de la Isla, y depositó de nuevo su confianza en el Hon. Francisco Porrata Doria, como una afirmación de la voluntad del electorado.

"Por cuanto, esta actuación implica que el pueblo rechazó tales imputaciones, e hizo a Francisco Porrata Doria digno de nuevo de su confianza.

"Por cuanto, esta Asamblea Municipal ha estudiado detenida-mente las alegaciones de los abogados del querellado Francisco Po-rrata-Doria, estudiando detenidamente la jurisprudencia pertinente especialmente los casos siguientes: *Speed* v. *Common Council of Detroit*, 98 Mich. 360, 57 N. W. 406 y 19 R. C. L. 935, donde se re-solvió lo siguiente:

"'Misconduct for which an officer may be removed must have been committed since his appointment to the office.' Véase también McQuillan Municipal Corporations, Vol. 2, pág. 1220 y 1221 en la que se dice lo siguiente: 'The doctrine of condonation of past of-fenses is often judicially applied to elective officers, and hence it is sometimes said that an officer cannot be removed for an offense com-mitted during a former term in another office for which he has not been convicted.' *State* v. *Patton*, 131 Mo. App. 628, *et seq.* y 110 S. W. 636. En el caso de *People* v. *Board of Fire Commissioners*, 6 N. Y. St. 658, se resolvió lo siguiente: 'Hence, it is obvious that mere political bias or personal dislike of the officer having the power of removal is not a cause.' Véase también el caso de *Gillet* v. *People*, 8 Colo. App. 553, reportado en la obra de McQuillan Municipal Cor-porations y en la que haciendo referencia a este caso se dice lo siguiente:

"'So, ordinarily, particular acts of usurpation of power, on the part of the Mayor, having no legal effect on the affairs of the city, are not sufficient grounds for removal.'"

Y la segunda:

"Por cuanto, esta Asamblea ha estudiado cuidadosamente las cuestiones planteadas, y ha leído con detenimiento la comunicación del Hon. Gobernador de Puerto Rico, en que se limita a transmitir a esta Asamblea el informe que recibiera del Auditor de Puerto Rico,

sin que en verdad se formulen cargos específicos contra el Alcalde de Guayama, por el Hon. Gobernador de Puerto Rico o por el Auditor Insular en su carácter de ciudadano particular, ni aparece que ese informe se haga suyo por el Gobernador de Puerto Rico, y bajo juramento se transmite a esta Asamblea como formulación de cargos suyos contra el Alcalde de Guayama.

"Por cuanto, es requisito de ley y de jurisprudencia que los cargos sean formulados específicamente por alguna persona particular, por un miembro de la Asamblea, o por el Gobernador de Puerto Rico, no llenando estos requisitos la comunicación del Ejecutivo Insular, de 29 de octubre de 1937."

Tras un examen cuidadoso del récord original y de todo lo actuado, expuesto y discutido ante esta Corte Suprema, creemos que no estuvo justificada la Asamblea en la actitud que asumiera y en la acción que finalmente tomara.

La ley reguladora del caso, que lo es el artículo 29 de la Municipal vigente ya citado, no exige que el Gobernador jure los cargos, y ello no constituye una práctica desusada ya que una ley general como lo es el Código de Enjuiciamiento Civil, dispone en su artículo 118 que cuando se jure la demanda, deberá jurarse la contestación, y eso no obstante exime expresamente del cumplimiento de ese deber al demandado que fuere un funcionario de la Isla en su carácter oficial.

Tampoco creemos que pueda interpretarse la acción del Gobernador como meramente poniendo en conocimiento de la asamblea un informe del Auditor sobre la conducta del alcalde. La carta dice:

"LA FORTALEZA
PUERTO RICO

"*October 29, 1937.*

"Hon. Presidente, Asamblea Municipal,
  "Guayama, P. R.

"Señor:
  "He recibido una comunicación de la Oficina del Auditor de Puerto Rico, en la que se formulan cargos al actual Alcalde de Guayama, Sr. Francisco Porrata Doria, en el ejercicio de su cargo. A continuación le hago una reseña de los mismos, con el fin de que se

siga por esa Hon. Asamblea Municipal el procedimiento fijado por el Art. 29 de la Ley Núm. 98, aprobada en mayo 15 de 1931, que dice así:

(Se transcribe el artículo.)

"*Primer cargo.*—Que sin autorización expresa alguna de la Asamblea Municipal de Guayama, P. R., el Alcalde Francisco Porrata Doria transigió el pleito civil Núm. 4420, seguido por el Municipio de Guayama contra Esteban Figueroa ante la Corte Municipal de Guayama, 'Municipio de Guayama, demandante, *v.* Esteban Figueroa, demandado.' En este caso se embargaron bienes suficientes a cubrir la suma reclamada por el Municipio, que fueron rematados por la suma de $130.00 y adjudicados al concuñado del Alcalde Francisco Porrata Doria, Sr. Gabriel Torres Laborde.

"*Segundo cargo.*—Que allá para el año de 1935, con el propósito de alquilarla a la PRERA, el alcalde Francisco Porrata Doria ordenó la construcción de una casa por cuenta del Municipio de Guayama, 30 × 30 pies, en el barrio 'Guamaní', de Guayama, la cual fué construída por Luis Anés Rodríguez hasta dejarla en cuadro. Esta casa hasta ese punto construída, lo fué con maderas pagadas por el Municipio de Guayama, tomadas por Luis Anés Rodríguez, según orden (conduce) Núm. 233–69, de abril 8 de 1935, en la casa de J. R. Nieves, Sucursal de Guayama, y todo obedeciendo a lo ordenado por el Alcalde Francisco Porrata Doria, según *affidavit* 519, suscrito por Luis Anés Rodríguez, ante el notario Luis Domínguez Rovira, de fecha 17 de febrero de 1937, que se acompaña. Que esta misma casa en cuadro, por orden expresa del Alcalde Francisco Porrata Doria, fué desmontada por el carpintero Nieves Cortijo, de Guayama, y su auxiliar Ángel Rodríguez, y reconstruída en el barrio 'La Fuente de Jobos' como casa club del Partido Socialista de Guayama, y así es conocida, siendo la misma casa que se describe en la escritura núm. 100, otorgada en la ciudad de Guayama el 14 de Octubre de 1936, ante el notario W. Ramos Vázquez, en la cual declararon los esposos Haddock Nieves haberla construído. Esta casa, si bien es cierto que se empezó a construir con una casa en cuadro propiedad del Municipio de Guayama, no es menos cierto que por contribución y colectas se siguió construyendo hasta la terminación para una casa club del Partido Socialista.

"*Tercer cargo.*—Que el alcalde Francisco Porrata Doria construyó una casa denominada 'La Pesca', a orillas del mar, en el barrio 'Las Mareas', de Guayama, con materiales, propiedad del Municipio de Guayama, P. R., y estableció un negocio de pesca allí. Que más

tarde ordenó el desmonte de dicha casa y la reconstruyó en la calle San Rogelio, de Guayama, sitio denominado 'Hoyo Inglés', la que desde entonces se usó y se usa actualmente para casa club del Partido Socialista, de Guayama, P. R. El solar en que fué emplazada dicha casa aparece cedido por el Municipio de Guayama allá por el año 1910 a los ésposos Fernando Haddock y Mercedes Nieves, de Guayama, P. R., quienes aparecen ser dueños de la casa reconstruída, según escritura Núm. 101, de Acta de Construcción, otorgada en Guayama, P. R., ante el notario W. Ramos Vázquez, el día 14 de octubre de 1936.

"*Cuarto cargo.*—Que allá para el año 1933, el Alcalde de Guayama, Francisco Porrata Doria, construyó una casa en el barrio Borinquen, calle Fidelidad, del antedicho Municipio, con el fin de ser usada como club de la Sección Socialista de Guayama, y al efecto obtuvo dinero y los servicios personales de los miembros de dicho club, quedando la casa construída. Que la misma se utilizó como club Socialista desde que se fabricó, instalando el Alcalde Francisco Porrata Doria servicio de luz eléctrica en ella desde la fecha de su construcción, y puso el contador a nombre de Alejandro Ortiz Resto, vecino de Guayama, prestando fianza de $1.00 al Municipio de Guayama para garantizar el pago del servicio. Que desde marzo de 1934 hasta noviembre de 1936 se llevó una cuenta a nombre de Alejandro Ortiz Resto en los libros del Municipio de Guayama, y que un poco después de las elecciones de 1936, en vista de que no se pagaba la corriente consumida y el montante de luz adeudado era considerable, pues ascendía a $40 y pico, Alejandro Ortiz Resto les comunicó al Alcalde y al Secretario-Auditor Municipal, Sres. Francisco Porrata Doria y R. Navarro, que el Comité de la Sección Socialista de Guayama, P. R., debía pagar dicha deuda por corriente eléctrica, y darlo a él de baja porque le perjudicaba aparecer en los libros como adeudando servicios de corriente eléctrica al Municipio. Que dichos funcionarios seguido le replicaron que ellos arreglarían el asunto en cuestión. Que hará como cuatro meses aproximadamente, Alejandro Ortiz Resto quiso poner luz eléctrica en su residencia privada, y el Municipio de Guayama le negó la petición porque dicho señor aparecía en los libros adeudando una cantidad considerable de dinero por concepto de corriente eléctrica.

"*Quinto cargo.*—Que el Alcalde de Guayama, Francisco Porrata Doria, hacía retener el pago de las nóminas a los trabajadores y personas empleadas por el Municipio, con el propósito de que éstos se vieran obligados a vender sus créditos contra el Municipio a Jacinto

Valentín, conserje de la Alcaldía de Guayama, mediante un descuento de un 40 ó un 50 por ciento, y una vez hecho esto, el Secretario-Auditor Municipal, Rafael Navarro, pagaba el montante de dichos créditos a Jacinto Valentín.

"*Sexto cargo*.—Que el Alcalde Francisco Porrata Doria compró un *truck* a Smallwood Brothers, Sucursal de Guayama, P. R., registrando dicho vehículo a nombre de Eusebio Serrano, para su explotación. Que faltándole gomas a dicho *truck*, por orden y autorización del Alcalde Francisco Porrata Doria, se usaron durante varios meses, cuatro gomas de *truck*, propiedad del Municipio de Guayama, P. R., y pertenecientes a los *trucks* usados para limpieza pública, en el Departamento de Sanidad local.

"*Séptimo cargo*.—Que el Alcalde Francisco Porrata Doria, incurriendo en una grave negligencia en la administración, y con conocimiento de ello, permitió que Santos Gutiérrez destruyera parte de la cerca de la casa escuela rural 'Línea Capó', corriendo su cerca y ocupando la casa que construyera en ese sitio algunos metros del solar de dicha escuela que pertenece al Departamento de Instrucción. Este hecho fué reportado al Ingeniero Municipal, que lo era entonces el Sr. Bruno, y éste trasladóse al sitio ordenando el paro de la destrucción de la cerca, pero el Alcalde Francisco Porrata Doria, que fué llamado por la Sra. Gutiérrez, e informado de los sucesos, le dijo a la Sra. Gutiérrez que no hiciera caso y que siguiera su obra. Que en esa misma fecha aparece una donación hecha por Santos Gutiérrez al Municipio de Guayama por la suma de $25.00.

"Le informo, además, que de no proceder esa Asamblea Municipal dentro de los próximos diez días después de recibida esta comunicación, a considerar y resolver los cargos de referencia, siguiendo el procedimiento que prescribe la Ley Municipal en estos casos, procederé a tenor de lo dispuesto en el Art. 29 arriba transcrito.

"Atentamente,

"(fdo.)     Blanton Winship,
"Gobernador de Puerto Rico."

La propia asamblea interpretó rectamente en un principio lo que significaba la comunicación del Gobernador cuando inició los procedimientos que ella misma tituló *"In re: Impeachment* del Alcalde de Guayama, Hon. Francisco Porrata Doria."

■ Sobre la conclusión a que llegó la asamblea acerca de la absolución del alcalde por el propio electorado, ya que los hechos que se le imputan fueron cometidos en su administración pasada y el pueblo lo reeligió para la presente administración, la jurisprudencia está en verdad dividida. Véase la monografía sobre esta cuestión que aparece en 17 A. L. R. 279.

En Puerto Rico la cuestión es nueva. Aún este tribunal no ha tenido la oportunidad hasta ahora de pasar sobre la misma. Y pesando ahora las razones aducidas en pro y en contra, nos parece más sana y efectiva la teoría que sostiene que el *impeachment* procede. Como dijo la Corte Suprema de Iowa en el caso de *State* v. *Welsh,* 109 Iowa 19, 79 N. W. 369, ''el objeto principal de una remoción es librar a la comunidad de un funcionario corrupto, incapacitado e indigno de confianza. Sus actuaciones durante su mandato anterior revelan tan eficazmente que puede calificársele de tal, lo mismo que las del término en que está sirviendo. La reelección no condona el delito. La conducta ofensiva puede que no haya sido descubierta con anterioridad a su elección, y, sea ello como fuere, no había sido establecida en la forma prevista por el estatuto.''

■ En cuanto a la gravedad de los cargos a los efectos de si son o no suficientes para la destitución del funcionario, habiéndolos ya transcrito, bastará referirnos a ellos. Hablan por sí mismos. Revelan una continuidad en ciertas prácticas para usar de los bienes de la comunidad no en beneficio de ella sino en el suyo personal y en el de un partido político, que no son compatibles con el debido ejercicio de un cargo de confianza, y otros actos, como los especificados en los cargos primero, séptimo y quinto, ponen de manifiesto a un funcionario que no cumple con la ley y que usa de su puesto para permitir una explotación ilegal sistemática de los empleados del municipio en sus sueldos. Tales cargos, de probarse, constituyen base más que suficiente para la destitución.

Por virtud de todo lo expuesto y sin necesidad de entrar a considerar y a resolver el cuarto de los errores señalados que es como sigue: "La Asamblea Municipal de Guayama erró al permitir que interviniera y votara en este procedimiento el Asambleísta Santiago Porrata Doria, hermano del Alcalde, Sr. Francisco Porrata Doria," y que nos inclinamos a creer que también fué cometido, *se impone la revocación de las dos resoluciones de la Asamblea Municipal de Guayama de enero 31, 1938, que de hecho constituyen una sola, pues ambas decretan el archivo y sobreseimiento definitivo del procedimiento de impeachment y absuelven al Alcalde de los cargos contra el mismo formulados, devolviéndose el récord a la dicha asamblea para que continúe el procedimiento en forma no inconsistente con los principios enunciados en esta opinión.*